Jennette **BLUMER, Individually and as Administratrix of the Estate of Joseph Blumer, Deceased, Appellee**

v.

**FORD MOTOR COMPANY and McCrackin Ford, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 5, 2010.

Filed May 6, 2011.

Nancy R. Winschel, Pittsburgh, for Ford Motor, appellant.

Charles Becker, Philadelphia, for appellee.

BEFORE: MUSMANNO, SHOGAN and ALLEN, JJ.

OPINION BY ALLEN, J.:

In this products liability case, Ford Motor Company and McCrackin Ford, Inc. (collectively "Appellants") appeal from the judgment entered in favor of Jennette Blu-

mer, individually and as the administratrix of the estate of Joseph A. Blumer, deceased ("Plaintiff"). On appeal, Appellants contend that the trial court erred in admitting reports of prior incidents and in permitting Plaintiff to submit evidence of design changes. Specifically, Appellants maintain that the reports of the prior incidents were not substantially similar to the accident at issue, and alternatively, that the trial court failed to provide a limiting instruction informing the jury that the prior incidents could only be used to establish notice because they constituted hearsay. In addition, Appellants assert that the trial court abused its discretion in allowing Plaintiff to introduce evidence of design changes, contending that the design changes were inadmissible under Pa.R.E. 407, which prohibits evidence of subsequent remedial measures. We find no reversible error in the trial court's evidentiary rulings. Accordingly, we affirm the judgment.

The trial court summarized the facts and procedural history of this case as follows:

## I. BACKGROUND

On September 9, 2004, Joseph Blumer (hereinafter "Mr. Blumer"), age 43, husband of the Plaintiff, Jennette M. Blumer, was employed as a tow truck driver. On said date, Mr. Blumer responded to a call requiring roadside assistance to a disabled vehicle stopped at a parking lot located at 5000 Centre Avenue in Pittsburgh, Pennsylvania. The motorist, James Walendziewicz, was experiencing problems with the power steering on his 1993 Ford Ranger pickup truck and requested that the vehicle be towed to his home.

After attaching the Ranger to his 2002 Ford F–350 tow truck, Mr. Blumer soon realized that he could not tow the Ranger truck up the parking lot ramps. Accordingly, Mr. Blumer placed at least one "chock" behind the rear wheels of the Ranger truck and told Mr. Walendziewicz that he would lower the Ranger and then Mr. Walendziewicz should back the Ranger off the L-arms of the tow truck and down the ramp. Once done, Mr. Walendziewicz could then drive the Ranger to the top of the ramp and Mr. Blumer would tow it from there.

Mr. Blumer then operated the towing machinery located at the rear driver's side of the tow-truck to lower the Ranger to the ground. He did not re-enter the cab of his truck at any point, and the tow-truck was completely stationary as the Ranger was lowered to the ground. After the Ranger was lowered, Mr. Walendziewicz got in his vehicle and looked over his right shoulder to back off the L-arms of the tow truck and down the hill. Seconds later, he felt a crash and saw the tow truck impact with the front of his vehicle. Mr. Blumer had been run over by his own tow truck and subsequently died under said vehicle.

Plaintiff alleged that a defective design of the parking brake by the Ford Motor Company (hereinafter "Ford") caused the parking brake to disengage. Further, it later was determined that the McCrackin Ford dealership sold the subject Ford F–350 to Edward Butler, Mr. Blumer's employer. Plaintiff sought compensatory and punitive damages from [Appellants].

## II. PROCEDURAL HISTORY

A Complaint was filed April 3, 2006. On July 14, 2008, the case was scheduled to be heard during the November 2008 trial list. Due to delays associated with discovery requests, the case was moved to the March, 2009 trial list. After a trial lasting six (6) days, the Jury returned a verdict in favor of Plaintiff and against [Appellants] in the amount of $8,750,000. On March 20, 2009, the Ver-

dict was molded to add delay damages, which increased Plaintiff's recovery to $10,089,229.45.

A Motion for Post–Trial Relief was filed by [Appellants] on March 27, 2009. The parties' briefs were timely filed. This Court scheduled argument on the [Appellants'] Post–Trial Motion for June 23, 2009.

In an Order dated June 25, 2009, this Court denied [Appellants'] Motion for Post–Trial Relief. On July 14, 2009, a Notice of Appeal to the Superior Court was filed by [Appellants]. On that same date, Judgment on the Verdict in favor of the Plaintiff was entered in the amount of $10,089,229.45.

On July 24, 2009, this Court Ordered [Appellants] to file a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days pursuant to Pa.R.A.P. 1925(b). Said statement was timely filed, raising six (6) matters charging err[or] on the part of this Court. Upon the filing of this Court's Opinion, the matter shall be properly before the Superior Court of Pennsylvania.

Trial Court Opinion, 10/30/09, at 1–3 (information in brackets added).

While Appellants presented six issues in their Pa.R.A.P. 1925(b) statement, only three are presented in their brief on appeal:

1. Did the trial court commit reversible error by admitting evidence of subsequent remedial measures in contravention of Pa.R.E. 403 and 407?

2. Did the trial court commit reversible error by admitting evidence of other alleged incidents, without requiring Plaintiffs to establish that those incidents were substantially similar to the incident at issue in this case?

3. Did the trial court commit reversible error by admitting hearsay evidence for a non-hearsay purpose without giving the limiting instruction required by Pa.R.E. 105?

Brief for Appellants at 3.[1]

All of Appellants' issues challenge the trial court's denial of their post-trial motion for a new trial based upon alleged errors that the trial court made in its evidentiary rulings.

[O]ur standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment. . . .

Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

*Schmidt v. Boardman*, 958 A.2d 498 (Pa.Super.2008), *aff'd* 11 A.3d 924 (Pa. 2011) (citation omitted).

 Appellants first contend that the trial court erred in admitting evidence of

1. For ease of disposition, we have renumbered Appellants' issues on appeal.

design changes in the Ford truck's parking brake system. Appellants assert that the design changes were inadmissible as subsequent remedial measures. We do not agree.

At trial, Plaintiff introduced evidence of design changes that were implemented to the parking brake of the Ford F–350 for the 2005 model year. Appellants objected to this evidence, contending that the design changes were barred as subsequent remedial measures under Pa.R.E. 407. The trial court overruled Appellants' objection because the design changes were contemplated by Appellant Ford prior to Plaintiff's accident.

Pa.R.E. 407 prohibits the admission of subsequent remedial measures except in certain, delineated circumstances. In its entirety, Pa.R.E. 407 states:

**Subsequent remedial measures**

When, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove that the party who took the measures was negligent or engaged in culpable conduct, or produced, sold, designed, or manufactured a product with a defect or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for impeachment, or to prove other matters, if controverted, such as ownership, control, or feasibility of precautionary measures.

Pa.R.E. 407.

By its very language, Pa.R.E. 407 proscribes evidence of "subsequent measures" taken by a defendant with regard to a product "after an injury or harm." Here, the trial court concluded that Pa.R.E. 407 did not prohibit evidence of the design changes because the changes concerned alternative braking systems that were predetermined by Appellant Ford *prior* to the accident at issue. Trial Court Opinion, 10/30/09, at 8–9. As the trial court explained:

The design changes made by [Appellant Ford] were [ ] offered to show that ... there were alternatives to the subject braking system *before* the accident causing Mr. Blumer's death ... By definition, said testimony cannot be contrary to Pa.R.E. 407 entitled "*Subsequent* Remedial Measures" since all testimony elicited concerned a time period previous to the incident.

The questions [by Plaintiff's counsel] were prefaced with, "[p]revious to Mr. Blumer's accident ... [.]" (Tr. at 598). [Appellants'] counsel objected to any mention of subsequent design changes, at which time this Court and counsel met at sidebar and this Court reminded counsel of its previous ruling that any testimony in regards to the subsequent braking system must be focused on information that was available and contemplated prior to Mr. Blumer's death. (Tr. at 597–606).

As previously stated, said testimony was admitted to prove the feasibility of an alternative braking system available prior to the time of the accident ...

Trial Court Opinion, 10/30/09, at 8–9 (emphasis in original).

Although the admissibility of "remedial measures" taken before an accident occurs appears to be a novel issue in Pennsylvania, our result is compelled by the plain language of Pa.R.E. 407. The unambiguous and plain language of Pa.R.E. 407 only restricts the introduction of remedial measures that are made after the occurrence of the injury or harm. Therefore, measures that are predetermined before a particular accident occurs are not "remedi-

al measures" under Pa.R.E. 407 because the measures are not intended to address the particular accident that gave rise to the harm.

■ In addition, we find strong guidance in F.R.E. 407 and other jurisdictions whose subsequent remedial measure rules are identical in their language to Pa.R.E. 407. The courts interpreting these rules, as well the notes accompanying them, make it clear that changes in design that are devised prior to the accident at issue are not barred as a subsequent remedial measure. *See, e.g.* F.R.E. 407, *Advisory Committee Notes—1997 Amendments* ("[T]he words 'an injury or harm allegedly caused by' were added to clarify that the rule applies only to changes made after the occurrence that produced the damages giving rise to the action. Evidence of measures taken by the defendant prior to the 'event' causing 'injury or harm' do not fall within the exclusionary scope of Rule 407 even if they occurred after the manufacture or design of the product."); *Diehl v. Blaw–Knox,* 360 F.3d 426, 433 n. 5 (3d Cir.2004); *Ranches v. City & County of Honolulu,* 115 Hawai'i 462, 168 P.3d 592, 597–601 (2007) (collecting and discussing cases); *accord Klutman v. Sioux Falls Storm,* 769 N.W.2d 440, 451–52 (N.D.2009).

Because the testimony elicited by Plaintiff's counsel only concerned alternative braking systems contemplated by Appellant Ford prior to the accident at issue, there was no violation of Pa.R.E. 407. Accordingly, the trial court did not abuse its discretion in admitting evidence of the design changes.

In a related argument, Appellants contend that the trial court abused its discretion in admitting evidence of the design changes because their prejudicial effect outweighed their probative value under Pa. R.E. 403. Appellants, however, did not raise this issue in their post-trial motions

or in their brief in support of their post-trial motions. *See* Appellants' Motion for Post–Trial Relief, 3/27/09, at 1–11; Appellants' Brief in Support of Motion for Post–Trial Relief, 4/20/09, at 1–59; R.R. at 2100–2110; 2147–2217. Appellants' contention is therefore waived for purposes of this appeal. *See* Pa.R.C.P. 227.1(b)(1)(2); *Am. Future Sys., Inc. v. Better Bus. Bureau,* 872 A.2d 1202, 1215 (Pa.Super.2005); *Diamond Reo Truck Co. v. Mid–Pacific Indus.,* 806 A.2d 423, 428 (Pa.Super.2002).

■ Next, Appellants contend that the trial court abused its discretion in admitting evidence of prior incidents, namely the Continuous Quality Improvement System ("CQIS") reports and the Master Owner Relations System ("MORS") reports (collectively "the Reports"). The Reports were generated by Appellant Ford, and contained statements from consumers and/or Appellant Ford's dealers describing accidents involving the Ford truck's braking mechanism. According to Appellants, Plaintiff failed to establish that the accidents depicted in the Reports were substantially similar to the accident at issue. More specifically, Appellants argue that the accidents in the Reports could have been caused by factors other than Appellant Ford's braking system because the Reports did not definitively conclude that the parking brakes caused the accident. Upon review, we conclude that Appellants are not entitled to relief.

Evidence of prior accidents involving the same instrumentality is generally relevant to show that a defect or dangerous condition existed or that the defendant had knowledge of the defect. However, this evidence is admissible only if the prior accident is sufficiently similar to the incident involving the plaintiff which occurred under sufficiently similar circumstances. The burden is on the party introducing the evidence to establish this

similarity before the evidence is admitted.

*Lockley v. CSX Transp., Inc.*, 5 A.3d 383, 395 (Pa.Super.2010) (citation omitted).

■■■ "Determining whether and to what extent proffered evidence of prior accidents involves substantially, similar circumstances will depend on the underlying theory of the case advanced by the plaintiffs." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1239 (10th Cir.2004). "If the evidence of other accidents is substantially similar to the accident at issue in a particular case, then that evidence will assist the trier of fact by making the existence of a fact in dispute more or less probable, and the greater the degree of similarity the more relevant the evidence." *Id.* "Naturally, this is a fact-specific inquiry that depends largely on the theory of the underlying defect in a particular case." *Id.* Accordingly, a wide degree of latitude is vested in the trial court in determining whether evidence is substantially similar and should be admitted. *Lockley*, 5 A.3d at 395.

■ At trial, Plaintiff proceeded on various causes of action, including negligence, defective design and failure to warn. Notably, Plaintiff also advanced a strict product liability claim pursuant to a product malfunction theory.[2]

> [A] plaintiff pursuing a case under the malfunction theory can assert a successful strict product liability claim based purely on circumstantial evidence in cases where the allegedly defective product has been destroyed or is otherwise unavailable. Although the plaintiff does not have to specify the defect in the product, the plaintiff nonetheless must present evidence from which a jury can infer the elements of a strict liability action, beyond mere speculation.

*Barnish v. KWI Bld. Co.*, 602 Pa. 402, 980 A.2d 535, 539 (2009).

In principle, a malfunction theory of strict liability is akin to the doctrine of res ipsa loquitur. As our Supreme Court explained:

> While reminiscent of the logic of a res ipsa loquitur case, the malfunction theory requirements correlate with the three elements of a standard [Restatement (Second) Torts, § 402A] claim. First, the "occurrence of a malfunction" is merely circumstantial evidence that the product had a defect, even though the defect cannot be identified. The second element in the proof of a malfunction theory case, which is evidence eliminating abnormal use or reasonable, secondary causes, also helps to establish the first element of a standard strict liability case, the existence of a defect. By demonstrating the absence of other potential causes for the malfunction, the plaintiff allows the jury to infer the existence of defect from the fact of a malfunction. For example, by presenting a case free of abnormal uses, such as using the product for an unintended purpose, the plaintiff can demonstrate that the product failed to perform as a reasonable

---

2. At the conclusion of trial, the jury found that Appellant Ford was negligent, that the parking brake system contained a design defect, that the parking brake system malfunctioned, and that Appellant Ford failed to warn of a defect in the parking brake system after it was sold. Jury Verdict Slip, 3/19/09, at 1–3; R.R. at 2081–83. The jury also found that each of these bases for liability was a substantial factor in causing Mr. Blumer's death. *Id.*

On appeal, Appellants do not contend that under the facts and circumstances of this case, the malfunction theory was unavailable to Plaintiff, or that the evidence was insufficient to sustain a malfunction theory of liability. Therefore, the malfunction theory was properly submitted to the jury, and that jury's verdict in favor of Plaintiff on the malfunction theory was supported with sufficient evidence.

customer would expect; thus, that it malfunctioned. Similarly, by eliminating other reasonable secondary causes, a plaintiff allows the jury to infer that a defect in the product caused the malfunction, as opposed, for example, to operator error or failure to service the equipment. Similarly, by presenting a case free of "abnormal uses" by the plaintiff and free of "other reasonable secondary causes," a plaintiff can establish through inference from circumstantial evidence the second and third elements of a 402A case, that the alleged defect caused the injury (as opposed to another cause) and that the defect existed when it left the manufacturer's control (as opposed to developing after the product left the manufacturer's control).

*Id.* at 541–42 (citation omitted).

■ To establish a *prima facie* case under a malfunction theory, a plaintiff can adduce circumstantial evidence including: (1) the malfunction of the product; (2) expert testimony as to a variety of possible causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect.

*Id.* at 542–43 (citation omitted).

Here, during trial, Plaintiff submitted forty-one Reports to the trial court for *in camera* review. The trial court reviewed the reports, permitted argument on the overall issue of their admissibility, and determined that twenty-eight of the prior incidents were substantially similar to the accident in the instant case. Specifically, the trial court found substantial similarity based upon the fact that the prior incidents all involved model year 1999–2004 Ford F–350 trucks with the same braking system design; in all of the prior incidents, the trucks experienced unexplained parking brake failure while parked on an incline. N.T., 3/11/09, at 527; R.R. at 1311.

■ We conclude that twenty-five of the twenty-eight Reports satisfied the substantial similarity test, and that the trial court did not err in admitting them. From the face of these Reports, the jury could reasonably infer that the cause of the braking system failure was a defect in the parking brake mechanism itself. For example, the Reports contained statements from customers and Ford dealers that: "Customer pulled into restaurant, set the parking brakes, got out of the vehicle, and it rolled down the hill and hit some trees," Plaintiff's Trial Exhibit, P–28; R.R. at 2020; "Parking brake failed and vehicle rolled into a tree down a hill," *id.;* R.R. at 2021; "Customer was driving the vehicle and parked the vehicle on top of a hill. The emergency brake was engaged and the vehicle rolled down and hit another vehicle," *id.;* R.R. at 2027; "Emergency parking brake was applied but did not work. Vehicle was parked on a slight incline in driveway and rolled 50 to 60 feet back," *id.;* R.R. at 2029; "The emergency brake did not hold [and the vehicle] started to roll back and hit a tree and [another] vehicle," *id.;* R.R. at 2031; "The emergency brake did not hold. The vehicle rolled down and hit a stump while the vehicle was in gear and had the brakes down," *id.;* R.R. at 2037; "Dealer states customer alleges park brake did not hold vehicle while parked on an incline. The vehicle allegedly rolled and hit a tree," *id.;* R.R. at 2074.

Given the statements in these Reports, the jury could find that there was no other reasonable explanation for the malfunction of the parking brake system other than a defect in the parking brake mechanism. Contrary to Appellants' argument, the Reports need not detail the precise defect

within the parking brake system in order to be admissible as substantial similarity evidence because Plaintiff proceeded on a malfunction theory. *See Barnish,* 980 A.2d at 539 (stating that under the malfunction theory, "the plaintiff does not have to specify the defect in the product"); *Dansak v. Cameron Coca–Cola Bottling Co.,* 703 A.2d 489, 496 (Pa.Super.1997) (stating that "the malfunction itself is circumstantial evidence of a defective condition") (citation omitted). In the circumstances of this particular case, the fact that the precise defect with the parking brake system was not identified in the Reports goes to the weight of the evidence as opposed to its admissibility. Appellants were free to refute the Reports' natural inference of defective malfunction by adducing evidence, through cross-examination or otherwise, that the braking system failures were likely caused by something else. *See Bass v. Cincinnati Inc.,* 281 Ill.App.3d 1019, 217 Ill.Dec. 557, 667 N.E.2d 646, 650–51 (1996) (reiterating that a defendant can contest the inference of defect and causation that the plaintiff seeks to establish with substantial similarity evidence). For admissibility purposes, it was enough that the Reports established that the parking brake mechanism—as a whole—malfunctioned, apparently as the result of an inherent defect and without any reasonable, secondary causes.

In light of the fact that Plaintiff asserted a malfunction theory of liability, and this case concerns a 2002 Ford F–350 that experienced parking brake failure while parked on an elevated surface, the trial court did not err in concluding that twenty-five of the Reports were substantially similar to the accident at issue. *See Vernon v. Stash,* 367 Pa.Super. 36, 532 A.2d 441, 446 (1987) (concluding that where the plaintiff alleged that the transmission and handbrake of a car were defective, the trial court acted within its discretion in admit-

ting testimony that on previous occasions the car would "jump" out of gear and that the gear shifter moved positions while the car was parked). Therefore, barring some other evidentiary exclusionary rule, the Reports were admissible as circumstantial evidence to prove the existence of a defect, the cause of the accident, and/or notice of the defect. *See Hutchinson v. Penske Truck Leasing Co.,* 876 A.2d 978, 985 (Pa.Super.2005); *Spino v. John S. Tilley Ladder Co.,* 448 Pa.Super. 327, 671 A.2d 726, 735 (1996), *aff'd,* 548 Pa. 286, 696 A.2d 1169 (1997).

■ Otherwise, we agree with Appellants that three of the Reports did not meet the substantial similarity test. Although these Reports documented brake failure, the statements in the Reports indicate that the cause of the failure was not a malfunction in the parking brake mechanism. Rather, the brake failure was due to a disconnected cable located outside the parking brake mechanism and an entirely different brake system and design—*i.e.,* a hand-operated parking brake as opposed to the foot-operated parking brake, which was the relevant system at issue. Plaintiff's Trial Exhibit, P–28; R.R. at 2025, 2041, 2070–71. Unlike the Reports discussed above, a jury could not reasonably infer from these three Reports that the parking brake mechanism at issue malfunctioned and was defective. The trial court, therefore, erred in admitting these three Reports as substantial similarity evidence.

Despite the trial court's evidentiary error, we conclude that Appellants are not entitled to a new trial. Given the fact that twenty-five of the Reports were properly admitted to demonstrate a malfunction in the parking brake system, and the three inadmissible Reports were offered for the same purposes, it was highly unlikely that

the trial court's error affected the jury's verdict. In short, the content of the inadmissible Reports was cumulative in nature to the admissible Reports and, consequently, the evidentiary error was harmless. *See White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir.2002) (finding customer report evidence regarding the cause of the accident harmless error where governmental reports also demonstrated that the defect caused the accident); *cf. Commonwealth v. Bishop*, 936 A.2d 1136, 1144 (Pa.Super.2007) (stating that harmless error is established "where the erroneously admitted evidence was merely cumulative of other untainted evidence"). Therefore, Appellants are not entitled to relief in the form of a new trial.

Finally, Appellants contend that the trial court erred in admitting the Reports because they contained inadmissible hearsay. According to Appellants, the trial court should have provided the jury with a limiting instruction informing the jury that the statements in the Reports could not be considered for the truth of the matter asserted.

Although the out-of-court statements in the Reports arguably constituted hearsay, Appellants were required to preserve their alleged evidentiary error with a proper objection prior to or during trial. *See* Pa.R.C.P. 227.1(b)(1). Appellants assert that they preserved their hearsay objection by filing a motion in *limine* prior to trial, and also by requesting a cautionary instruction during trial. We do not agree.

In 2001, Pa.R.E. 103(a) was amended to add the following paragraph: "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a

claim of error for appeal." *Id.* The amendment to Pa.R.E. 103(a) is identical to the amendment to F.R.E. 103(a) that became effective on December 1, 2000. Pa.R.E. 103(a), *Comment.*

 Consistent with the above amendment to Pa.R.E. 103(a), a motion in *limine* may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion. Pa.R.E. 103, *Comment* ("A ruling on a motion in *limine* on record is sufficient to preserve the issue for appeal, without renewal of the objection or offer at trial."); *Trach v. Fellin*, 817 A.2d 1102, 1107 n. 3 (Pa.Super.2003) (*en banc*). Conversely, if the trial court defers ruling on a motion in *limine* until trial, the party that brought the motion must renew the objection at trial or the issue will be deemed waived on appeal. F.R.E. 103, *Advisory Committee Notes—2000 Amendments* ("[W]hen the trial court appears to have reserved its ruling or to have indicated that the ruling is provisional, it makes sense to require the party to bring the issue to the court's attention subsequently."); *Id.* (citing *United States v. Valenti*, 60 F.3d 941, 945 (2d Cir.1995)) ("Valenti's briefs and appendix contain no indication that he renewed at trial his request for a ruling, a step clearly required when the trial judge had earlier stated that he would reserve judgment until he heard the trial evidence. The failure to renew the objection constituted a waiver of the objection."); *see Markham v. Nat'l States Ins. Co.*, 122 Fed.Appx. 392, 397 (10th Cir.2004); *Douthit v. Jones*, 619 F.2d 527, 538–39 (5th Cir.1980).[3]

 Further, "[w]hen evidence which is admissible . . . for one purpose

---

**3.** Because the amendment to Pa.R.E. 103(a)(2) is modeled after the amendment to F.R.E. 103(a)(2), we find strong guidance in federal case law interpreting, and the Committee Notes accompanying, the amendment to F.R.E. 103(a)(2).

but not admissible ... for another purpose is admitted, the court upon request shall, or on its own initiative may, restrict the evidence to its proper scope and instruct the jury accordingly." Pa.R.E. 105. "Though the trial court may, on its own initiative, give a limiting instruction to the jury, the onus is on a party who is entitled to such an instruction to ask for one." *Commonwealth v. Serge,* 586 Pa. 671, 896 A.2d 1170, 1187 n. 12 (2006). When a party requests a limiting instruction, and asserts a specific ground for the instruction, the party waives all other grounds for the instruction that were not raised. *See id.;* Pa.R.E. 103(a); *cf. Commonwealth v. Cousar,* 593 Pa. 204, 928 A.2d 1025, 1041 (2007) ("The rule is well settled that a party complaining, on appeal, of the admission of evidence in the [c]ourt below will be confined to the specific objection there made.").

■ Here, Appellants asserted a hearsay objection to the Reports in a motion in *limine,* but the trial court deferred ruling on all motions related to the Reports until trial. N.T., 3/09/09, at 45–52; R.R. at 852–57. Appellants did not lodge a hearsay objection to the Reports during trial, nor did they ask the trial court to issue a definitive ruling on their motion in *limine.* In addition, Appellants did not request a limiting instruction on the ground that the Reports constituted inadmissible hearsay. Rather, Appellants requested a limiting instruction on the ground that the Reports could only be offered to prove notice, and could not be used to establish causation and/or a defect because they were not substantially similar to the accident at issue. N.T., 3/12/09, at 541–42; R.R. at 1325. Therefore, because Appellants did not make a hearsay objection to the Re-

ports at any time during trial, and failed to request a limiting instruction on the basis of hearsay, their assertion of error was not properly preserved at the trial level. *See* F.R.E. 103, *Advisory Committee Notes— 2000 Amendments; Id.* (citing *Valenti,* 60 F.3d at 945); *Serge,* 896 A.2d at 1187 n. 12; *cf. Cousar,* 928 A.2d at 1041. As such, we conclude that Appellants' hearsay arguments concerning the Reports are waived for purposes of this appeal.

For the above-stated reasons, we affirm the judgment in favor of Plaintiff and against Appellants.

Judgment affirmed.

Judge SHOGAN files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY SHOGAN, J.:

While I agree with the Majority in all other respects, I am constrained to disagree with the Majority's finding of waiver as it concerns hearsay and the trial court's failure to give a limiting instruction. Accordingly, I respectfully dissent.

Appellants challenge the admissibility of the Continuous Quality Improvement System ("CQIS")[1] reports and the Master Owner Relations System ("MORS") reports generated by Ford and/or its dealers. In the second issue, Appellants argue that the trial court erred in admitting the reports because the earlier incidents were not substantially similar. In the third issue, Appellants argue that the reports constituted hearsay and, even if they were admissible for the non-hearsay purpose of notice, a limiting instruction should have been given.

---

**1.** We note that the record reflects that these reports are also referred to as Control Quality Indicator System reports.

Prior to trial, Appellants filed a motion in *limine* to exclude evidence of other lawsuits, as well as the CQIS and MORS reports. The trial court granted the motion as to the exclusion of evidence of other lawsuits, but not as to the exclusion of the CQIS and MORS reports. Instead, the court ruled that it would decide the admissibility of the reports "as they come." N.T., 3/09/09, at 51. During trial, Appellees submitted 41 CQIS and MORS reports to the trial court for review. The court reviewed the reports in chambers, permitted argument on the overall issue of their admissibility but not on each report individually, and determined that 28 of the prior incidents were substantially similar to the failure in the instant case. N.T., 3/11/09, at 521–524; Trial Court Opinion, 10/30/09, at 7–8. As stated by the trial court:

'In its naked sense, [t]hose claims in those documents are identical to the claim here. We're on an incline ... it stopped ... we get out ... it rolls backwards. That's what we have here.' [N.T. 3/11/09, at 521–527].

In response to Appellants' argument regarding lack of substantial similarity, the trial court further stated:

Had they done some testing or done some investigation here, maybe we would know that this wasn't a defective product. This was driver error. This was whatever. We don't. They opted not to look into this further. So, consequently, we have these reports about similar incidents which people were told "Go talk to your liability carrier."

Okay. So I'm going to admit them for what they're worth.

N.T., 3/11/09, at 530.

Appellants then requested that the trial court instruct the jury that the reports only be considered for the issue of notice to Ford and not be used to establish causation or defect. N.T., 3/12/09, at 536–542. The trial court initially agreed the reports would be admissible for the purpose of notice and that the court would give the jury such an instruction. *Id.* at 541; 544. However, after Appellee objected, the trial court decided not to give such an instruction and admitted the 28 CQIS and MORS reports into evidence without limitation. *Id.* at 613–625. Instead, the following instruction was given:

[Plaintiff's counsel] are going to put into evidence reports of what they maintain are 28 similar incidents. You're to determine the weight, if any, that are to be given to these incidents.

*Id.* at 613–614.

Appellants claim that the trial court's failure to give an appropriate limiting instruction was prejudicial error. I agree.

For some time in Pennsylvania, evidence of other substantially similar occurrences involving an allegedly defective product has been, subject to the court's discretion, admissible in the plaintiff's case in chief to show (1) the existence of a defective condition, (2) causation, or (3) notice of the defect. *See, e.g., DiFrancesco v. Excam, Inc.,* 434 Pa.Super. 173, 642 A.2d 529, 535 (1994) (stating that evidence of other similar incidents is admissible only when the evidence concerns incidents that are sufficiently similar to the incident at issue).[2] Here, the reports indicated that there were nearly identical instances of other model year 1999–2004 Ford F350 trucks that experienced parking brake failure while parked on an incline. The incidents need not be exactly alike. *Id.* Accordingly, I concur with the Majority's decision that

---

**2.** I also note that our Supreme Court has held that evidence of the *absence* of prior incidents may be admissible in the defendant's case in chief, if relevant. *See Spino v. John S. Tilley Ladder Co.,* 548 Pa. 286, 696 A.2d 1169 (1997) (emphasis added).

there was no abuse of discretion in the trial court's conclusion that the reports of the twenty-five prior accidents were substantially similar.

However, I am compelled to write separately because, even if the events were substantially similar, the information had to be introduced in an admissible form. As noted, Appellants claim that the reports were inadmissible hearsay and that a limiting instruction should have been given.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Certain hearsay statements, though, which would be hearsay for one purpose may be admitted for non-hearsay purposes. *See McCormick on Evidence*, § 249, at 733–734 (3rd. ed.1984) (stating that a writing introduced to show that a party has been put on notice of a condition rather than to show the truth of matters asserted therein is not hearsay); *Packel & Poulin, Pennsylvania Evidence*, 2nd ed. § 801–802 p. 726 (same). Additionally, "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court upon request shall, or on its own initiative may, restrict the evidence to its proper scope and instruct the jury accordingly." Pa.R.E. 105.

Initially, I note that the Majority concludes the hearsay issue was not preserved and agrees with Appellee's assertion that Appellants never raised hearsay at trial and that the issue is waived on appeal. Op. at 1232; Appellee's Brief at 38. The record reveals that Appellants alleged hearsay in the motion in *limine* as to evidence of other accidents. Motion in Limine, 2/20/09. The record further reveals that the motion in *limine* was granted as to the exclusion of evidence of other lawsuits, but not as to the CQIS and MORS reports. Order, 3/9/09. There is no indication that Appellants objected to this ruling at trial or re-raised this issue. However, I point out that renewing the objection was not required. *Miller v. Peter J. Schmitt & Co., Inc.*, 405 Pa.Super. 502, 592 A.2d 1324, 1329 (1991). Furthermore, Appellants, while not conceding admissibility, requested a limiting instruction that the reports could be admissible limited solely to show notice. N.T., 3/12/09, at 538, 540. Accordingly, I conclude that Appellants have preserved the challenge to the admissibility of the reports of other accidents as hearsay.[3]

Moreover, because I conclude that the issue was properly preserved, I would grant Appellants relief on this issue. The record reveals that the CQIS reports are created and recorded when Ford Technicians call the Ford help phone number regarding problems they encounter with a vehicle. N.T., 3/12/09, at 554–558. The MORS reports are created and recorded when owners or an owner's representative contact Ford regarding an issue with a vehicle. *Id.* at 557. As such, these reports are out-of-court statements offered to prove the truth of the matter asserted and constitute hearsay. Moreover, because the hearsay reports contain hearsay statements by third parties, the reports are examples of hearsay within hearsay. Pa.R.E. 805.

Despite the conclusion that the reports at issue are hearsay, the reports arguably fall within the business record exception.

---

**3.** The Majority reaches the opposite conclusion but bases its decision on an interpretation of the F.R.E. 103 Advisory Committee Notes to the 2000 Amendments, an unpublished 10th Circuit case, and a 5th Circuit case from 1980 that does not mention Rule 103. Op. at 1232.

The exception to the rule against hearsay, commonly known as the business records exception, provides as follows:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Pa.R.E. 803(6).

> The justification for this exception [Rule 803(6) ] is that business records have a high degree of accuracy because the nation's business demands it, because the records are customarily checked for correctness, and because record keepers are trained in habits of precision. McCormick, Evidence, § 306 at 720 (2d Ed.1972). Double hearsay exists when a business record is prepared by one employee from information supplied by another employee. **If both the source and the records of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6). HOWEVER, IF THE SOURCE OF THE INFORMATION IS AN OUTSIDER, RULE 803(6) DOES NOT, BY ITSELF, PERMIT THE ADMISSION OF THE BUSINESS RECORD.** The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have. *See: United States v. Davis,* 571 F.2d 1354 (5th Cir.1978); 4 D. Louisell and C. Mueller, *Federal Evidence,* § 448 (1980); McCormick, *Evidence* § 310 at 725–726 (2d Ed.1972); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6)[04] (1981).

> *U.S. v. Baker,* 693 F.2d 183, 188 (D.C.Cir.1982) (emphasis supplied).

*Papach v. Mercy Suburban Hospital,* 887 A.2d 233, 246 (Pa.Super.2005) (reversed on other grounds).

This Court has repeatedly emphasized that there is a need for trustworthiness in applying the business record exception. *See, e.g., Birt v. Firstenergy Corp.,* 891 A.2d 1281 (Pa.Super.2006). "Merely characterizing a document as a business record is insufficient to justify its admission because a business record which contains multiple levels of hearsay is admissible only if each level falls within a recognized exception to the hearsay rule." *Id.* at 1291 (internal citation and quotation marks omitted); *see also Commonwealth Financial Systems, Inc. v. Smith,* 15 A.3d 492, 2011 PA Super 30 (2011) ("Rule 803(6) requires the proponent of documentary evidence to establish circumstantial trustworthiness").

Here, the trial court never delved into these requirements. There is *no* indication on the record as to the trustworthiness of the CQIS or MORS reports, and no findings as to hearsay, double hearsay, or legally supported conclusion as to whether the reports satisfy an exception to

the hearsay rules.[4] As such, I would vacate the judgment in this matter and remand for a new trial.

---

4. Appellants acknowledge that, even if otherwise hearsay, the reports would be admissible to establish notice to Ford. *See, e.g., Hutchinson v. Penske Truck Leasing Co.,* 876 A.2d 978, 985 (Pa.Super.2005) (stating that the substantial similarity test applies where the evidence of other accidents is offered to prove the existence of a defect, the cause of the accident or notice). In fact, Appellants point out that they objected to the use of the reports for any purpose other than notice after the trial court decided they were admissible, and that the trial court initially agreed to give a limiting instruction but subsequently opted not to give the instruction. N.T., 3/12/09, at 536–544.