J-S20006-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER YOUNG, | : | |
| | : | |
| Appellant | : | No. 1305 MDA 2017 |

Appeal from the Judgment of Sentence, September 29, 2016,
in the Court of Common Pleas of Centre County,
Criminal Division at No(s):  CP-14-CR-0001995-2015.

BEFORE:  GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED JUNE 13, 2018**

Christopher Young appeals *nunc pro tunc* from the judgment of sentence of one to two years' incarceration, entered after a jury convicted him of one count of simple assault.[1]  Young contends he is entitled to a new trial, because (1) the trial court admitted into evidence a letter from the "Black Rooster" discussing the assault, (2) the Commonwealth did not produce an anonymous tipster's identity, and (3) two jurors allegedly displayed bias (including racial bias) in the jury room.  After consideration of these issues, we affirm.

Young, a.k.a. the "Black Rooster," a.k.a. "Da Goosh,"[2] was serving time at Rockview State Correctional Institution, when the guards received a tip that

_____

[1] *See* 18 Pa.C.S.A. § 2701(a)(1).

[2] "Black Rooster" and "Da Goosh" are Young's nicknames.  N.T., 5/15/16 at 180.  Corrections Officers (COs) know them and have stored his nicknames in their prison's database on the inmates.  *Id.* at 143.

he had stowed drugs and weapons in his prison cell. Rockview's Corrections Officers (COs) undertook a predawn search of Young's private cell.

Things escalated quickly. According to COs Chad Fisher and Adam Taylor, Young immediately attacked them, rather than allowing the guards to search his cell. Young, on the other hand, testified that the COs initiated the physicality as he slept and he attempted to defend himself.

In support of the COs' rendition of events, the Commonwealth produced an intercepted letter from the "Black Rooster" to another inmate. Its relevant part states:

> It's Da Mutha Fuckin Gooch, Back Rooster on the set . . . Yeah, Yeah, you know I'm holding up swell, aint much to it. Just pissed off about it ya mean. Crackers ran in my hut while I was asleep 5:00 in the morning yelling & charging at me, tryna grab & throw me to the floor, and I wasn't having non[e] of it. I heard them Crackers & jumped right up. Mugged the front man & pieced him up. Stunned the hell out of him, he hesitated (aint no [*sic*] what to do), another one came over top of him & I banged him right in the back of his head. It was 6 off [*sic*] them crackers. So the shit turned into a wrestling struggle. But what really pissed me off about this whole shit is the fact that after that, they fabricated the write-up. Made it seem like they told me to cuff up & I Refused, so they came in & I just went on them. They fixed me up with 9 months back [in] this bitch . . .

Commonwealth's Exhibit 25. It was signed, "Camaraderie love, Black Rooster, Da Goosh." ***Id.***

Young filed a motion *in limine* to prevent the Commonwealth from introducing the Black Rooster's letter at trial, and the judge conducted a hearing on the issue. The judge did not rule upon the motion at that time.

- 2 -

Instead, he held the issue in abeyance to see if the Commonwealth's witness could identify Young as the letter's author, during the course of the trial.

At trial, when the judge asked if Young's attorney wished to challenge "Commonwealth's Exhibits 1 through 30," which included the Black Rooster's letter as Exhibit 25, the lawyer relied, "No objection." N.T., 5/17/16 at 167. Later, Young would admit that he authored the letter, but he said that it was hyperbolic, reflecting other inmates' beliefs about the incident. *Id.* at 180-185.

The jury convicted Young on one count of simple assault (by attempt) as to CO Fisher, but it was hung on another ten.[3] Verdict Slip, 5/17/16 at 2.

More than two months after sentencing, Young filed a *pro se* notice of appeal. There, he raised a new claim that, the jury's foreman had informed him "of a letter he wrote to the Honorable Judge Grine, bringing" to the trial judge's "attention that Fellow Jurors was [*sic*] partial, bias, using racial prejudice against [Young], and the Honorable Judge disregarded" that letter. Notice of Appeal, 12/9/16 at 3. He also charged that a "Female Juror's brother [is] a cop & she was very vocally bias against" him. *Id.*

In his 1925(a) Opinion, the trial judge explained that he "has not found such a letter in the record." Trial Court Opinion, 10/6/17 at 3. The trial court gave a similar reply as to the charge concerning a female juror who is allegedly

---

[3] Those other ten counts were two for aggravated assault against CO Taylor and CO Fisher, respectively, 18 Pa.C.S.A. § 2701(a)(3); seven counts of procuring a weapon while incarcerated, 18 Pa.C.S.A. § 5122(a)(2); and an additional count of simple assault against CO Taylor.

- 3 -

related to a police officer. Our review of the record also reveals no such letter evidencing juror bias, nor does Young cite us to any such letter of record in his brief.

Young raises three issues on appeal:

I. Whether the trial court erred in denying [Young's] motion *in limine* to exclude the letter signed "Black Rooster."

II. Whether the trial court erred in denying [Young's] Motion for Relief Under Rule 573(E) of the Pennsylvania Rules of Criminal Procedure.

III. Whether the trial court erred in failing to declare a mistrial after learning of improper juror bias.

Young's Brief at 5. We will address each in turn.

First, Young claims that the trial court erred by admitting into evidence the Black Rooster's letter. Specifically, Young argues that the Commonwealth failed to authenticate it at trial. ***See*** Young's Brief at 16. We find that he has waived this claim.

Pennsylvania Rule of Evidence 301 governs the procedure for preserving an evidentiary claim for appellate review. Under Pa.R.E. 301:

A party may claim error in a ruling to admit or exclude evidence only:

(1) if the ruling admits evidence, a party, on the record:

(A) makes a timely objection, motion to strike, or motion *in limine* . . .

Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(a)-(b).

Young undoubtedly objected to the letter's admission via his motion *in limine*, pre-trial. Had the trial judge definitively ruled to admit the Black Rooster's letter at that time, then Young would have met Rule 103's preservation requirement. That did not occur. Instead, the judge waited until trial to rule, to see whether the Commonwealth could lay an evidentiary foundation for its admission at trial. ***See*** N.T., 5/12/16 at 11.

But, at trial, Young's counsel made no subsequent objection when the Commonwealth moved to admit the letter. ***Id.*** at 167. In fact, by the time the Commonwealth moved for all 30 of its exhibits to be admitted as evidence, it had already had a witness read the complete letter to the jury. ***Id.*** at 153-156. Hence, the best time to object to the letter was *before* a witness read it aloud.

This Court has held that, "if the trial court defers ruling on a motion in *limine* until trial, the party that brought the motion must renew the objection at trial or the issue will be deemed waived on appeal." ***Blumer v. Ford Motor Co.***, 20 A.3d 1222, 1232 (Pa. Super. 2011). Young's lawyer did not renew the objection at trial. Thus, the trial judge never had an opportunity to rule "definitively on the record" as to Young's objection to the letter. Pa.R.E. 103(b). So, Young has waived his first issue on appeal.

His second appellate issue concerns the Commonwealth's nondisclosure of the name of the tipster, who reported that Young had contraband in his

cell, pursuant to Pennsylvania Rule of Criminal Procedure 573(E).[4] The trial court denied Young's discovery request in this regard, based upon its finding of the Commonwealth's "good faith" claim that it "did not have the information that was requested and the Court could not force the Commonwealth to disclose facts that they did not possess." Trial Court Opinion, 10/6/17 at 3.

Young argues that, because the anonymous tip "served as the basis of the Affidavit of Probable Cause supporting the filing of the Criminal Complaint against [Young], there is no reason that the Commonwealth should not have had that information." Young's Brief at 20. He blames the Commonwealth's not having the name in its file on the prosecutors' "willful blindness." *Id.*

Essentially, Young asks whether the Commonwealth's ignorance of the tipster's name was a "good faith" omission from its file or a ruse to circumvent the requirements of Pa.R.Crim.P. 573.[5] He does not contest the trial court's

---

[4] Pennsylvania Rule of Criminal Procedure 573(E) mandates:

> **(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with [its discovery obligations], the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

[5] Pennsylvania Rule of Criminal Procedure 573 imposes mandatory discovery obligations upon the Commonwealth. The relevant portions of that Rule are as follows:

interpretation of that Rule, nor does he cite to any precedent that he believes the court misapplied. Thus, his appeal challenges the trial court's credibility determination concerning the prosecutor's candor.

The judge believed the prosecutor's explanation, and we deferentially review a trial court's discovery rulings. "We note that questions involving discovery in criminal cases lie within the discretion of the trial court and that court's decision will not be reversed unless such discretion was abused." ***Commonwealth v. Rucci***, 670 A.2d 1129, 1140 (Pa. 1996) (citing ***Commonwealth v. Gockley***, 192 A.2d 693, 699 (Pa. 1963). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Grady v. Frito-Lay, Inc.***, 839 A.2d 1038, 1046 (***citing Paden v. Baker Concrete Constr., Inc.,*** 658 A.2d 341,

---

> In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> > (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth . . . .

Pa.R.Crim.P. 573(B)(1).

343 (Pa. 1995)).  Also, a trial court abuses its discretion if "the law is overridden or misapplied."  **Paden** (**quoting Mielcuszny et ux. v. Rosol**, 176 A. 236, 237 (Pa. 1934).

In performing an abuse of discretion review, the trial court's findings of fact that underlie its conclusion of law are binding upon an appellate court, unless they are "clearly erroneous."  **Grady**, **supra**.  Under that standard, we must accept the trial court's findings of fact as binding, unless definitely and firmly convinced that a mistake has been made.  In other words, we will only reverse a finding of fact if it is implausible in light of all the evidence.

Here, Young has no evidence to support his suggestion that attorneys for the Commonwealth engaged in "willful blindness" by not seeking out the tipster's identity.  As the prosecutor pointed out at the pre-trial hearing, "the Commonwealth is not required to do [a defense attorney's] investigation for him when that information is available to both parties."  N.T., 5/15/16 at 14. All that the Rule requires is that the prosecutor provide opposing counsel with access to evidence that "is within the possession or control of the attorney for the Commonwealth."  Pa.R.Crim.P. 573(B)(1)(a).

Young contends that affirming the trial court will make for "a perverse incentive for the Commonwealth to refuse to obtain certain information from the investigating officers so that the information need not be turned over to the defense."  Young's Brief at 20.  This policy argument is better directed to the Supreme Court of Pennsylvania's Committee on the Rules of Criminal Procedure than to this Court.  Absent evidence of record that definitively and

firmly convinces us otherwise, we must affirm the trial judge's finding that the prosecutors in this case did not turn a blind eye to exculpatory evidence.

There is nothing of record to contradict the trial judge's finding of "good faith." Applying the clearly erroneous standard, that finding is not implausible, and the trial judge did not abuse his discretion. Thus, we affirm his refusal to compel discovery.

Lastly, Young asks whether the trial court must order a remand or new trial due claims of jurors' biases during their deliberations. One accusation of bias is racial in nature; the other stems from the fact that a brother of one juror was a police officer. To support his juror-bias claims, Young references two letters from the jury's foreman. One letter supposedly went to the trial judge and the other went to Young.

Notably, Young argues that racial bias tainted his right to an impartial jury under the Sixth Amendment to the Constitution of the United States[6] and

---

[6] The Sixth Amendment to the Constitution of the United States dictates:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

Article I, § 9 of the Constitution of the Commonwealth of Pennsylvania.[7] He does not, however, assert that his right to an impartial jury under Pennsylvania's charter affords him any greater protections than its federal counterpart. *See Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991) (announcing a four-step analysis that parties should brief when advancing a claim under the state constitution, separate and apart from the federal). Thus, we will consider his constitutional claim solely under the Sixth Amendment and its relevant case law.

Pennsylvania Rule of Evidence 606 dictates that "during an inquiry into the validity of a verdict, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict." Pa.R.E. 606(b)(1). This is the "no-impeachment rule;" it renders jurors incompetent to testify as to what transpired in the jury

---

[7] Article I, § 9 of the Constitution of the Commonwealth of Pennsylvania is:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

room. "The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." *Id.* That said, the Rule allows two exceptions:

A juror may testify about whether:

(A) prejudicial information not of record and beyond common knowledge and experience was improperly brought to the jury's attention; or

(B) an outside influence was improperly brought to bear on any juror.

Pa.R.E. 606(b)(2).

Young does not allege that either of Pa.R.E. 606(b)'s exceptions apply. Instead, his claim that juror bias necessitates a new trial rests upon his Sixth Amendment right, as articulated in *Peña-Rodriguez v. Colorado*, 580 U.S. _____ (2017). Young argues for a remand to give the trial court, "which did not have the guidance of *Peña-Rodriguez* at the time of making its decision," an opportunity to conduct "further inquiry into the alleged racial bias by the juror(s)." Young's Brief at 25-26. He would, in the alternative, accept "a new trial devoid of juror bias." *Id.* The Commonwealth replies that he "has not met the threshold requirement of showing that one or more jurors 'made statements exhibiting overtly racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations . . . .'" Commonwealth's Brief at 12-13. We agree with the Commonwealth.

*Peña-Rodriguez* overruled Pennsylvania's absolute prohibition on juror testimony under Pa.R.E. 606(b) whenever that testimony shows racial animus in the jury room. *Peña-Rodriguez*, Slip Opinion at 10 (*rejecting, by name,*

*Commonwealth v. Steele*, 961 A.2d 786 (Pa. 2012) (holding otherwise)). This is the first time a Pennsylvania appellate court has had to consider the constitutional right announced in *Peña-Rodriguez*.

In that case, a jury convicted the defendant of sexual assault. Moments after the trial judge dismissed the panel, two jurors reported to the defense attorney that another juror had expressed racial bias toward Peña-Rodriguez and his witness.

The jurors provided exact quotes of what their fellow juror had said. For example, the racist juror told his collogues (1) "I think [Peña-Rodriguez] did it because he's Mexican and Mexican men take whatever they want;" (2) "nine times out of ten Mexican men were guilty of being aggressive toward women and young girls;" and (3) they should not believe Peña-Rodriguez's alibi witness because "the witness was '"an illegal,"' despite the fact that the witness testified to being an American citizen. Slip Opinion at 4. Defense counsel took the two jurors' affidavits and made those documents a part of the trial court's record.

The defendant then moved for a mistrial, but the trial court ruled it could not even hold a hearing on the matter. Applying Colorado Rule of Evidence 606(b) on no-impeachment,[8] the trial court held that the reporting jurors were

---

[8] CRE 606(b), substantially mirroring Pa.R.E. 606(b), mandates as follows:

**(b) Inquiry Into Validity of Verdict or Indictment.**
Upon an inquiry into the validity of a verdict or indictment,

incompetent to testify as to what transpired in the jury room; hence, a hearing would prove pointless. Colorado's appellate courts affirmed, but the Supreme Court of the United States reversed, holding that there is a Sixth Amendment exception to the no-impeachment rule when evidence of racial bias emerges from deliberations. If "a *juror makes a clear statement* that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." ***Peña-Rodriguez***, Slip Opinion at 17 (emphasis added). "In such cases, a court may decline to apply the no-impeachment rule, consider juror testimony, overturn a jury verdict, and hold a new trial." ***United States v. Robinson***, 872 F.3d 760, 769–70 (6th Cir. 2017).

---

a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jurors' attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

In assessing Young's claim that the foreman sent a letter to the court of common pleas accusing a fellow juror of racial bias, the trial judge explained that:

> this Court has not found such a letter in the record. Therefore, this Court cannot determine the merit of the accusation as it has no evidence, testimony, or anything else but a bald assertion made by [Young] in [his notice of appeal].

Trial Court Opinion at 3. As previously mentioned, we likewise have found no such letter in the record. Given this evidentiary gap, trial judge's refusal to grant Young a **Peña-Rodriguez** hearing was appropriate. The trial court's determination that a party needs more than "a bald assertion" to prompt the court to set aside Pa.R.E. 606(b) strikes us as rational. We think that the trial court's requirement that, at least, a *prima facie* showing of improper animus must be made before convening a hearing on the matter is reasonable.[9]

---

[9] That said, after unsealing the jury room, **Peña-Rodriguez v. Colorado**, 580 U.S. \_\_\_\_ (2017), provided us with very little meaningful guidance for pinpointing a constitutional violation, if and when someone like Young comes forward with actual evidence. The only direction we can find is the following paragraph:

> Not every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry. For the inquiry to proceed, there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict. To qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict. Whether that threshold showing has been satisfied is a matter committed to the

Also, we note that Young states that the foreman sent him a notarized letter describing the other juror's racial animus. Young's Brief at 22. But that letter is not of record either. Thus, we likewise cannot grant him relief on that basis any more than we could his first. Hence, his claims of juror bias are not cognizable as the record currently stands.

And, even if his claims of juror bias were cognizable on this record, Young's contention that one of the jurors' bias arose from her brother's occupation as a police officer is inadmissible on its face. **_Peña-Rodriguez_** does not extend a constitutional right to be free from juror's-relative's-occupation-based bias, but only racial bias. Thus, Pa.R.E. 606(b) would constitutionally operate to bar the trial court from exploring Young's claim of

---

substantial discretion of the trial court in light of all the circumstances, including the content and timing of the alleged statements and the reliability of the proffered evidence.

Slip Opinion at 17.

So, for a trial court to ignore the no-impeachment rule, defendants must produce some evidence that the "racial animus" was a "significant motivating factor" that led a juror to vote guilty. Slip Opinion at 17. Racial animus, the Court says, is not to be confused with "offhand . . . racial bias or hostility." **_Id._** We cannot envision the distinction that the Court asks us to draw. We also have no idea what "*substantial* discretion" is. **_Id._** (emphasis added). Are we to apply deference greater than an abuse-of-discretion review when a trial judge eventually faces hard evidence of racial bias in the jury room?

Fortunately, given the lack of such hard evidence in this record, we need not attempt to read the Sixth Amendment entrails of **_Peña-Rodriguez_**, today. We save that divination for a future case.

- 15 -

the unknown female juror's bias, regardless of whatever the foreman's alleged letters might contain.

Thus, contrary to Young's argument, remanding with instructions for the trial judge to conduct a ***Peña-Rodriguez*** hearing is not justified on the record before us.  Likewise, he is not entitled to a new trial.

In sum, we conclude that the trial judge did not err on any of the grounds that Young has alleged.

Judgment of sentence affirmed.

President Judge Gantman and Judge Ott concur in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/13/2018