**Rodney S. BIRT and Robin Birt, Appellants**

v.

**FIRSTENERGY CORP., GPU, Inc. d/b/a GPU Energy, and Pennsylvania Electric Company d/b/a Penelec, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 16, 2005.
Filed Jan. 24, 2006.

request there, as here, must be granted before it becomes effective.

Paul V. Webb, Lakewood, NY, for appellants.

Mark E. Mioduszewski, Erie, for GPU, Firstenergy and Pennsylvania Elec., appellees.

Robert J. Behling, Pittsburgh, for Heil & Andrews, participating party.

Before: JOYCE, ORIE MELVIN and TODD, JJ.

ORIE MELVIN, J.:

¶ 1 In this personal injury action, Appellants Rodney and Robin Birt appeal from the judgment entered in favor of Firstenergy Corp., GPU, Inc. d/b/a GPU Energy, and Pennsylvania Electric Company d/b/a Penelec (hereafter collectively "Penelec"), following a jury verdict in its favor, as well as summary judgment previously entered in favor of Heil & Andrews, Inc. (hereafter Heil). We affirm.

¶ 2 The facts and procedural history may be summarized as follows. In September 2000, Heil was acting as general contractor for the construction of a house on property situate in Warren County. On September 12, 2000, Heil contacted J. Steven Nelson Excavating (hereafter Nelson) to excavate the foundation, and representatives from both companies met at the site. Work began immediately despite the existence of two power lines over the property which were interfering with the arm of a piece of excavation equipment.

¶ 3 On September 14, 2000, Mr. Birt, who was employed by Nelson, suggested that he tie the lower power line to the higher one so that both would be out of the

way of the excavation equipment. Mr. Birt was then lifted up in the bucket of the excavator to the lower power line and had attached a cord to it when he was struck by 7200 volts of electricity and fell to the ground 17 feet below. He suffered severe burns and other injuries as a result.

¶ 4 Appellants filed the instant lawsuit against Penelec (as owner and operator of the power lines) and Heil, as well as the property owners, asserting claims of negligence against each. Discovery ensued which revealed, among other things, that a representative of Heil had notified the Pennsylvania "One Call" system of the scheduled excavation in early July 2000 and that Penelec was among those utilities contacted about the work. The property owners subsequently entered into an agreement with Penelec dated July 28, 2000, for relocation of the power lines, for which Penelec was paid approximately $3000. Although the relocation agreement did not include a specific time for performance, it indicated an expiration date of September 28, 2000.

¶ 5 After the suit was commenced, Heil joined Nelson as an additional defendant. In February 2004, the trial court granted summary judgment in favor of Nelson and the homeowners, and all claims were discontinued against them. The trial court subsequently granted summary judgment in favor of Heil in accordance with the general rule that a contractor is not liable for injuries which result from work entrusted to a subcontractor. *Leonard v. Commonwealth of Pennsylvania, Department of Transportation*, 565 Pa. 101, 105, 771 A.2d 1238, 1240 (2001). The case proceeded to a jury trial against Penelec only, and the jury returned a verdict finding that Penelec was not negligent. Post-trial motions were denied, and this appeal followed wherein Appellants claim that they are entitled to judgment notwithstanding the verdict and/or a new trial because: (1) the verdict in favor of Penelec is against the weight of the evidence; (2) the trial court committed several errors in its evidentiary rulings and the charge to the jury; and (3) Heil was not entitled to summary judgment. We address these contentions in this order.

¶ 6 At the outset, we note our standard of review of a trial court's denial of a motion for judgment notwithstanding the verdict and a new trial. "[T]he standard of review for an order 'granting or denying judgment notwithstanding the verdict ... [is] whether there was sufficient competent evidence to sustain the verdict.'" *Brown v. Progressive Insurance Co.*, 860 A.2d 493, 497 (Pa.Super.2004) (quoting *The Birth Center v. The St. Paul Cos.*, 567 Pa. 386, 397, 787 A.2d 376, 383 (2001)), *appeal denied*, 582 Pa. 714, 872 A.2d 1197 (2005).

> We must view the evidence in the light most favorable to the verdict winner. Jnov should be entered only in a clear case, where the evidence is such that no reasonable minds could disagree that the moving party is entitled to relief. Review of the denial of jnov has two parts, one factual and one legal:
>
> > Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded evidence at trial, we will not substitute our judgment for that of the finder of fact.

*Brown*, 860 A.2d at 497 (citations omitted). Similarly, when evaluating a claim for a new trial, we are guided by the following principles.

> [W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion. Absent a clear abuse of discretion by the trial court, an appellate court

must not interfere with the trial court's authority to grant or deny a new trial. *Blicha v. Jacks*, 864 A.2d 1214, 1216–17 (Pa.Super.2004) (citations and quotation marks omitted).

¶ 7 Appellants' first contention is that the verdict in favor of Penelec is against the weight of the evidence as a matter of law, and they are therefore entitled to jnov or a new trial. "This Court's review of a weight claim is a review of the trial court's exercise of discretion, not of 'the underlying question of whether we believe that the verdict is against the weight of the evidence.'" *Alwine v. Sugar Creek Rest, Inc.*, 883 A.2d 605, 611 (Pa.Super.2005). In support of this claim, Appellants correctly point out the high standard of care imposed on Penelec.

> Our courts have long recognized that the standard of care imposed upon a supplier of electric power, particularly when the power is supplied at high voltage, is among the highest recognized in the law of negligence. A supplier of electric current is bound not only to know the extent of the danger, but to use the very highest degree of care practical to avoid injury to everyone who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise in contact with them. ' * * * * That a transmission line is a dangerous instrumentality is recognized everywhere. No matter where located it is a source of grave peril and the law requires that the possessor of such an instrumentality exercise a high degree of care.

*Colloi v. Philadelphia Electric Co.*, 332 Pa.Super. 284, 481 A.2d 616, 620 (1984)(internal citations and quotation marks omitted).

¶ 8 Appellants rely primarily on *Colloi* and *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 130 A.2d 123 (1957) in support of their contention. In *Colloi*, a subcontractor was working to repair a leak in the water sprinkler system at a Philadelphia Electric Co. (PECO) substation. A laborer, who was excavating a concrete sidewalk with a jackhammer in order to reach a broken pipe, struck an underground power line and was severely injured. He filed suit against PECO which joined the subcontractor as an additional defendant. At trial, PECO moved for a directed verdict, and the trial court granted the motion on the basis of the independent contractor doctrine. On appeal, this Court determined that there was a prima facie case of liability against PECO, and the case was remanded for a new trial so that a jury could determine whether PECO met its high degree of care.

¶ 9 In *Stark*, the plaintiff was injured while working as a helper to a crane operator unloading railroad cars under some overhead power lines. The crane came close enough to the power lines to cause arcing through the crane and into the plaintiff's body as he stood nearby. A jury found in favor of the plaintiff and against the power company, as well as against the plaintiff's employer and the owner of the railroad siding where the cars were located. However, the trial court granted jnov in favor of the power company. On appeal, our Supreme Court affirmed on the basis of the trial court's opinion, quoting it at length to explain the duty which the power company owed. Since there was no reason for the power company to anticipate the use of a crane in this particular location underneath its lines, there could be no liability on its part.

¶ 10 In the case *sub judice*, Appellants repeatedly assert that Penelec took no steps to protect workers from the high-voltage line at this particular job site. They point to the evidence that Penelec was one of various utilities notified via the

Pennsylvania One Call system[1] that construction work would take place at this location and had thereafter agreed with the homeowner to relocate the power lines. Appellants also cite to testimony regarding various precautionary measures Penelec could have taken to alert others to the danger. We cannot agree that this evidence entitles Appellants to relief.

¶ 11 In *Colloi*, this Court recognized the high standard of care imposed upon suppliers of electric power and determined that a jury must determine whether the power company met that high standard. That is precisely what happened in this case. Appellants' argument does no more than present for this Court the very evidence which had already been considered by a jury and resolved in favor of Penelec. As the trial court noted in its opinion explaining the denial of Appellants' post-trial motions, there was evidence presented at trial that Penelec took various practical measures to protect construction workers who find themselves in the vicinity of its power lines.[2] Contrary to Appellants' argument, the evidence does not show that Penelec "did nothing"[3] at this location. Moreover, simply because there was testimony presented as to other protective action which could have been taken does not mean Penelec was negligent. The critical question was whether Penelec breached its duty of care, and the jury found it did not. Based on our review, we find no abuse of the trial court's discretion in concluding that this

verdict was not shocking to its sense of justice. This claim must therefore fail.

¶ 12 Next, Appellants raise a number of alleged trial errors which they contend adversely affected the outcome of the case. The first such error is the admission of evidence of Mr. Birt's criminal record during the cross-examination of two witnesses. In assessing this claim we are guided by the well-settled principle that the admission or exclusion of evidence is a matter left to the sound discretion of the trial court. *Harris v. Toys "R" Us*, 880 A.2d 1270, 1274 (Pa.Super.2005). "[O]ur standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.* (citation omitted).

¶ 13 The record reflects that prior to trial, the parties took the deposition of Mr. Birt's treating physician, Dr. Mory. During cross-examination, counsel for Penelec asked Dr. Mory if he was aware of Mr. Birt's criminal history of burglary and statutory rape. Counsel for Appellants objected and sought to exclude this testimony via motions *in limine*, which the trial court denied.

¶ 14 Also at trial, during the cross-examination of Appellants' economic expert Dr. Shick, counsel for Penelec asked if he was aware that Mr. Birt had been convicted of insurance fraud in the year 2000.[4] Appel-

---

1. The *Pennsylvania One Call System* is a communication system set forth by statute at 73 P.S. §§ 173 *et seq.*, designed to "protect the public health and safety by preventing excavation or demolition work from damaging **underground lines** used in providing electricity, communication, gas, oil delivery, oil product delivery, sewage, water or other service[.]" *See* Act of December 10, 1974 (P.L. 852, No. 287)(emphasis added).

2. For example, Penelec presented evidence that these power lines were installed at a height which exceeded that required by the National Electric Safety Code.

3. Appellants' brief at 13.

4. It should be noted that Dr. Shick had used the year 2000 as the basis for his calculation of Mr. Birt's future lost earnings.

lants' counsel objected and requested a mistrial, which the trial court denied. Nevertheless, after argument by counsel at sidebar, the trial court sustained the objection because Mr. Birt had not yet testified.

¶ 15 Appellants contend on appeal, as they did before the trial court, that the cross-examination of Dr. Mory solicited prejudicial evidence which was not admissible under Pa.R.E. 609 since the convictions were more than 10 years prior to trial.[5] They also contend that the above question posed to Dr. Shick was highly prejudicial and warranted a mistrial, particularly since no curative instruction was provided.

¶ 16 The applicable Rule of Evidence provides in relevant part as follows.

**Rule 609. Impeachment by evidence of conviction of a crime**

**(a) General rule.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement.

**(b) Time limit.** Evidence of a conviction under this rule is not admissible if a period · of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction substantially outweighs its prejudicial effect.

Pa.R.E. 609, 42 Pa.C.S.A.

■ ¶ 17 With respect to Dr. Mory, the trial court explained that the challenged

questions were relevant to his knowledge of Mr. Birt as his treating psychologist, including what information Mr. Birt provided or failed to disclose in the course of diagnosis and treatment. Dr. Mory acknowledged that a patient's criminal history was important for him to know and further testified that Mr. Birt gave different information regarding his criminal record to Dr. Mory's own social worker. The trial court reasoned that the jury needed to be aware of whether Dr. Mory's diagnosis and treatment were based "at least in part, upon inaccurate information." Trial Court Opinion, 2/4/05, at 6. In other words, the trial court concluded that the probative value of these older criminal convictions substantially outweighed any prejudice, and thus the evidence was admissible. Based on our review of this case where Mr. Birt's psychological condition was plainly at issue, we are unable to conclude that the trial court abused its discretion in allowing the testimony by Dr. Mory.

■ ¶ 18 With respect to Dr. Shick's testimony, we are similarly not persuaded that a mistrial was warranted. "In reviewing a trial court's decision to deny a request by a party for a mistrial we will reverse only if the trial court committed an abuse of discretion or legal error in denying the request." *Gorski v. Smith*, 812 A.2d 683, 712–13 (Pa.Super.2002), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004). In addressing this contention, the trial court opined first that the question to which an objection was sustained was harmless error because Mr. Birt would be testifying. Trial Court Opinion, 2/4/05, at 5.[6] As such, evidence of the conviction for

---

**5.** Notably, Appellants do not argue that the statutory rape conviction should have been excluded because sexual offenses are generally not considered *crimen falsi* offenses for

impeachment purposes. *Commonwealth v. Dale*, 836 A.2d 150, 155 (Pa.Super.2003).

**6.** Mr. Birt did take the witness stand and answered a number of questions about this

insurance fraud in the year 2000 would clearly be admissible under Pa.R.E. 609, and we agree any error in the timing of the question was therefore harmless. Secondly, the trial court determined the evidence was relevant to Dr. Shick's calculations of lost earnings. *Id.* Even Dr. Shick conceded that a criminal record would be an important consideration in determining a potential worker's employability. N.T. Trial, 9/22/04, at 383, 398–99. While Appellants focus on the fact that such evidence is inherently prejudicial, there can be no dispute that this conviction is relevant and admissible evidence. As such, there is no basis for a mistrial. Additionally, the trial court further explained that it declined to provide a curative instruction about the question because it believed such would be more harmful than helpful to the jury. Trial Court Opinion, 2/4/05, at 5. While Appellant argues that the trial court "refused" to provide a curative instruction,[7] nowhere do they establish one was ever sought. In any event, we do not discern an error of law or abuse of the trial court's discretion in refusing to grant a mistrial on this basis.

■ ¶ 19 Next, Appellants challenge the trial court's denial of their request to call an employee of Penelec as a witness during their case in chief. The record reveals that the witness, Rick Lyle, was named on Appellants' supplemental pre-trial statement yet was not subpoenaed to testify at trial. N.T. Trial, 9/23/04, at 525–28. Nevertheless, on the fourth day of the jury trial, Appellants asked the trial court to require the presence of Mr. Lyle to testify. *Id.* Appellants sought his testimony because they believed he was the person whose initials "R.L." appeared on facsimile transmissions to and from the Pennsylva-

nia One Call System. The trial court denied the request, concluding that Appellants were well aware of this witness and had ample time to secure his presence for trial but failed to do so. *Id.* at 529–31; Trial Court Opinion, 2/4/05, at 2–3. On appeal, Appellants assert that Mr. Lyle's testimony was crucial to their case and explain that they did not realize his connection with the One Call documents until testimony by another Penelec witness at trial. Since Mr. Lyle was never called in Penelec's defense, Appellants claim prejudice.

■ ¶ 20 Appellants cite no legal authority to support their contention that they are entitled to a new trial because of this particular ruling. As such, this claim has been waived. *Eichman v. McKeon,* 824 A.2d 305, 319 (Pa.Super.2003), *appeal denied,* 576 Pa. 712, 839 A.2d 352 (2003); Pa.R.A.P. 2119(b), 42 Pa.C.S.A. Nonetheless, we do observe that a trial court's decision on whether to compel the attendance of a witness is governed by an abuse of discretion standard. *51 Park Properties v. Messina,* 720 A.2d 773, 775–76 (Pa.Super.1998), *appeal denied,* 558 Pa. 632, 737 A.2d 1225 (1999). Our review of these circumstances, including the timing of the request, fails to reveal any abuse of the trial court's discretion in refusing to compel Mr. Lyle's attendance.

■ ¶ 21 In a related argument, Appellants assert that they were entitled to a missing witness instruction since Penelec did not call Mr. Lyle to testify. Appellants made the request based on Mr. Lyle's status as an employee of Penelec who was under its control. N.T. at 798–99. The trial court denied the requested instruction and also cautioned Appellants' counsel that his argument to the jury

---

prior conviction on both direct- and cross-examination.

7. Appellants' brief at 16.

should not ask it to draw a negative inference from Mr. Lyle's failure to testify. *Id.* at 800–01. Appellants cite to *Bennett v. Sakel,* 555 Pa. 560, 725 A.2d 1195 (1999), in support of their argument.

¶ 22 In *Bennett,* our Supreme Court held that "an attorney may not ask the jury to draw an adverse inference concerning the opposing party's failure to call a witness where that witness was equally available to both sides." *Id.* at 564, 725 A.2d at 1196–97. Appellants suggest that since Mr. Lyle was not available to them once the trial court refused to compel his presence, they were entitled to make such an argument with an appropriate instruction to the jury. However here, as in *Bennett,* the absent witness is not one who was peculiarly within the control of one party or the other. As such, neither the instruction nor the argument was warranted in this case. *Id.* at 564, 725 A.2d at 1196. This claim therefore merits no relief.

■ ¶ 23 Next, Appellants challenge various references to OSHA regulations [8] throughout the trial. Specifically, they assert that there was no evidence that either Mr. Birt or his employer Nelson violated any OSHA regulations, and, thus, any evidence detailing those standards was improper and highly prejudicial. However, Appellants' argument fails to recognize that evidence of industry standards and regulations is generally relevant and admissible on the issue of negligence. *See Dallas v. F.M. Oxford, Inc.,* 381 Pa.Super. 89, 552 A.2d 1109 (1989) (explaining that evidence of customary practice within an industry is admissible in negligence cases), *appeal denied,* 522 Pa. 612, 563 A.2d 498 (1989); *Brogley v. Chambersburg Engineering Co.,* 306 Pa.Super. 316, 452

A.2d 743 (1982) (stating that OSHA regulations are admissible on the question of standard of care).

¶ 24 The record reveals that Penelec did introduce into evidence a citation issued to Nelson charging a violation of certain OSHA regulations in November 2000. N.T. at 474–79. Specifically, the citation alleged that Nelson (1) allowed the excavation equipment to reach within 10 feet of energized power lines; (2) allowed an employee to be lifted up and ride in the bucket of the excavator without fall protection; and (3) allowed an employee to work without protective helmets. Counsel for Penelec also referenced OSHA in his opening statement, and the trial court later provided a jury instruction regarding the limited applicability of those regulations to the case.

¶ 25 The trial court explained the relevance of this evidence as follows.

While it is true that the OSHA regulations in this case do apply to employers and not employees, a jury is entitled to consider whether a violation of these regulations, by John Steven Nelson, contributed to Plaintiff Rodney Birt's injuries. Placed in context, the jury in this case was entitled to consider whether this accident was, at least in part, the result of improper workplace activity, or whether, despite the OSHA violations, Penelec was negligent. By instructing the jury on how to use the evidence of OSHA regulations, the jury was able to consider not whether *Rodney Birt* violated the regulations, but rather, whether the accident was the result of something *other than* Penelec's negligence.

Trial Court Opinion, 2/4/05, at 3 (emphasis in original). We agree with the trial

**8.** Occupational Health and Safety Act of 1970, 29 U.S.C. §§ 651 *et seq.;* 29 C.F.R. §§ 1910 *et seq.*

court's reasoning. Since evidence of the OSHA regulations and alleged violations was both relevant to and admissible on the negligence claim presented, we perceive no abuse of the trial court's discretion in admitting it. Additionally, reference to this particular evidence in the opening statement and in the charge to the jury was wholly proper. *See Mansour v. Lingan-na,* 787 A.2d 443, 449 (Pa.Super.2001) (observing that counsel's remarks which are not inflammatory or prejudicial do not require relief), *appeal denied,* 568 Pa. 702, 796 A.2d 984 (2002); *King v. Stefenelli,* 862 A.2d 666, 673 (Pa.Super.2004) (finding no error where jury charge was based on facts developed at trial). Accordingly, we reject this claim by Appellants as without merit.

■ ¶ 26 Appellants' next claim of evidentiary error is the exclusion of certain records prepared by a Penelec employee. Appellants called that employee, Brenda Ryan, as a witness and asked her about her visit to the accident site on September 14, 2000. Appellants then attempted to introduce her incident report into evidence, and the trial court sustained Penelec's objection. N.T. Trial, 9/21/04, at 294–301. The basis for the trial court's ruling was that the report included a hearsay statement by another Nelson employee that he believed the power lines were not live. *Id.*; Trial Court Opinion, 2/4/05, at 4–5.

■ ¶ 27 Appellants assert that the trial court erred in refusing to admit this business record under Pa.R.E. 803(6) and 42 Pa.C.S.A § 6108. However, both the rule and the statute provide that such a record may be excluded under circumstances where the trial court has reason to question its trustworthiness. *See* Pa.

R.E. 803(6), 42 Pa.C.S.A. (stating that a business record is a hearsay exception "unless the sources or information or other circumstances indicate lack of trustworthiness."); 42 Pa.C.S.A. § 6108(b) (providing a business record is competent evidence "if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission."). Appellants have made no attempt to acknowledge that the report includes hearsay or to provide a basis for admitting that hearsay statement. Merely characterizing a document as a business record is insufficient to justify its admission because a business record which contains multiple levels of hearsay "is admissible only if each level falls within a recognized exception to the hearsay rule." *Hreha v. Benscoter,* 381 Pa.Super. 556, 554 A.2d 525, 529 (1989), *appeal denied,* 524 Pa. 608, 569 A.2d 1367 (1989). Appellants' claim must therefore fail.

¶ 28 Appellants' last assertion of trial error relates to a requested point for charge. We note that this claim is difficult to assess since Appellants' argument does not specify the place in the record where this ruling was made to demonstrate that they have preserved this issue,[9] a violation of Pa.R.A.P. 2119(c), 42 Pa.C.S.A. Nevertheless, we have reviewed the record including the chambers discussion about the points for charge and agree with the trial court that Appellants' request was not supported by the evidence. N.T. Trial, 9/27/04, at 790–91; *see Angelo v. Diamontoni,* 871 A.2d 1276, 1279 (Pa.Super.2005) (explaining that trial court may only charge jury on the law applicable to the facts presented), *appeal denied,* —— Pa. ——, 889 A.2d 87, 2005 Pa. Lexis 2341 (2005). Additionally, the trial court's in-

---

**9.** *See* Appellant's brief at 23–24. Appellants cite only to the Reproduced Record (R.R. 993a), which is a page from their motion for post-trial relief, and which likewise fails to state how and when this claim was presented to the trial court.

structions as a whole adequately and accurately conveyed to the jury the relevant law to be applied in this case. This contention therefore merits no relief. *See Magette v. Goodman*, 771 A.2d 775, 777 (Pa.Super.2001) (explaining that an appellate court must "examine the charge in its entirety against the background of the evidence to determine whether error was committed."), *appeal denied*, 567 Pa. 762, 790 A.2d 1017 (2001).

¶ 29 Finally, we turn to Appellants' claim that the trial court erred in granting summary judgment in favor of Heil. "Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." *Universal Health Services, Inc. v. Pennsylvania Property and Casualty Insurance Guaranty Assoc.*, 884 A.2d 889, 892 (Pa.Super.2005) (citation omitted).

> [S]ummary judgment is appropriate only where the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds cannot differ can a trial court properly enter summary judgment.

*Mountain Village v. Longswamp Township*, 582 Pa. 605, 614, 874 A.2d 1, 11–12 (2005) (citations omitted).

¶ 30 The trial court based its summary judgment ruling upon *Leonard v. Commonwealth of Pennsylvania, Department of Transportation*, 565 Pa. 101, 105, 771 A.2d 1238, 1240 (2001). There, the appel-

lant was an iron worker at a bridge construction site. His employer, Cornell, was a subcontractor on the PennDOT project hired by another subcontractor, High Steel Structures, Inc., which in turn was a subcontractor to the general contractor, a company referred to as Kiewit/Perini. The appellant was injured when he fell while working on the bridge, and there was no safety net or other safety device in place. The appellant filed a negligence suit against PennDOT and the various subcontractors including Cornell. The trial court granted compulsory nonsuits or directed verdicts in favor of each of the named defendants. The Commonwealth Court affirmed, and our Supreme Court granted *allocatur* on "the questions of whether a general contractor or subcontractor who was not 'present' at the work site may nevertheless be in 'control' of the work site pursuant to contract or law so as to have a duty to make the site safe, and whether such a contractor or subcontractor may delegate such a duty to a subordinate subcontractor." 565 Pa. at 105, 771 A.2d at 1240.

¶ 31 The Court reiterated the "established law that a contractor is not liable for injuries resulting from work entrusted to a subcontractor." *Id.* at 105, 771 A.2d at 1240. It then cited to the Restatement as follows:

> A possessor of land may put a number of persons severally in charge of the particular portions of the work of erecting a structure or creating any other condition upon the land. Again, a general contractor employed to do the whole of the work may, by the authority of his employer, sublet particular parts of the work to subcontractors. In such a case, the rule stated in this Section applies to subject the particular contractor or subcontractor to liability for only such harm as is done by the particular work entrusted to him.

*Id.* at 105–06, 771 A.2d at 1240 (quoting Restatement (Second) Torts, § 384, comment d). The Court concluded that Cornell, "as the subcontractor entrusted with the work of erecting steel, would normally be the only party liable for injuries occurring in that pursuit." *Id.* at 106, 771 A.2d at 1240–41. The Court rejected the appellant's arguments that Kiewit/Perini and High Steel could not delegate their regulatory and contractual responsibilities to a subcontractor such as Cornell. As Kiewit/Perini and High Steel did not have a presence at the site or control over the work performed by Cornell and, further, since those contractors had fully delegated responsibility for steel erection to Cornell, the Court concluded those entities were not liable to the appellant. The Court also recognized the principle that, "[l]ogically, safety responsibility best rests on the subcontractor doing the work, for that party is most familiar with the work and its particular hazards." *Id.* at 109, 771 A.2d at 1242.

¶ 32 Appellants suggest that *Leonard* is distinguishable here because there is sufficient evidence from which a jury could infer that Heil had a presence at the home construction site and retained control over the work which Nelson performed. Contrary to Appellants' assertions, however, the clear evidence demonstrates that Heil entrusted the work of excavating the foundation to Nelson including the relinquishment of control over performance of that work. Furthermore, while Appellants emphasize that Nelson and Heil did not have a written contract specifying the terms of their respective duties, there can be no serious question that Nelson and Heil did enter into an agreement whereby Nelson would perform the excavation work for the foundation of the house. Based on our review, we find the trial court properly granted summary judgment to Heil based on *Leonard*.

¶ 33 Moreover, Appellants' challenge to Heil's status as a statutory employer under Pennsylvania's Workers' Compensation Act, 77 P.S. §§ 1 *et seq.*, also lacks merit. The Act applies to any injury occurring within the Commonwealth of Pennsylvania. *Id.* at § 1. Our review finds that Heil falls squarely within the elements of a statutory employer and is thereby entitled to its protections. *See Pastore v. Anjo Construction Co.,* 396 Pa.Super. 58, 578 A.2d 21, 25 (1990) (setting forth the five conditions to create the relationship of "statutory employer" and thus avoid liability at common law: (1) an employer who is under contract with an owner or one in the position of an owner; (2) premises occupied by or under the control of such an employer; (3) a subcontract made by such an employer; (4) part of the employer's regular business is entrusted to such a subcontractor; and (5) an employee of such a subcontractor). As stated above, the clear evidence demonstrates that an agreement did exist between Heil and Nelson for the performance of specific work, and the remaining conditions are plainly satisfied.[10]

¶ 34 For all of these reasons, we conclude that the trial court did not err as a matter of law or abuse its discretion in granting summary judgment in favor of Heil.

¶ 35 Judgment affirmed.

---

10. We have also reviewed the cases cited by Appellants in support of their contention that various other sections of the Restatement of Torts permit recovery against Heil. *See* Appellants' brief at 28–32. We find each of those cases is easily distinguishable from the case at bar.