J-A01015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARTIN BROWN, | |
| Appellant | No. 57 EDA 2015 |

Appeal from the Judgment of Sentence August 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004214-2013

======================================================

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARTIN B. BROWN, | |
| Appellant | No. 686 EDA 2015 |

Appeal from the Judgment of Sentence August 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003080-2011

BEFORE: LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED FEBRUARY 19, 2016**

Appellant Martin Brown appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County by the Honorable Glenn B. Bronson on August 1, 2014. After a careful review, we affirm.

*Former Justice specially assigned to the Superior Court.

The trial court aptly detailed the relevant facts and procedural history herein as follows:

At trial, the Commonwealth presented the testimony of Philadelphia Police Lieutenant Edward Thompson, Philadelphia Police Detectives Neil Goldstein and Ralph Domenic, Philadelphia Police Officers Sharon Johnston[2] and Brian Stark, Chief Medical Examiner Samuel Gulino, Melvin Ferguson, Aaron Raynor, Eionna Raynor, and Benjamin Levin. [Appellant] testified on his own behalf. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

In January of 2011, defendant was friends with Aaron and Clyde Raynor.[3] N.T. 5/21/14 at 136. Aaron Raynor was Clyde Raynor's cousin. N.T. 5/21/14 at 92-93, 95, 135; 5/22/14 at 11. Melvin Ferguson was engaged to Clyde's sister, Eionna Raynor.[4] N.T. 5/21/14 at 134 -135. Robert Spears was Clyde's neighbor. N.T. 5/21/14 at 137. All of these individuals knew each other and were friends. N.T. 5/21/14 at 134 -137; 5/22/14 at 124 - 128.

On the evening of January 16, 2011, defendant drove to Clyde's home and picked up Clyde, Spears, and Ferguson, and drove everyone to the Union Hall near 2nd Street and Callowhill Street for an all-you-can-eat, all-you-can-drink cabaret. N.T. 5/21/14 at 138, 140, 206; 5/23/14 at 15.[5] Aaron met up with this group at the cabaret later that evening. N.T. 5/21/14 at 139; 5/22/14 at 15; 5/23/14 at 17. When the cabaret concluded, in the early morning hours of January 17, 2011, the five friends returned to defendant's vehicle to return home. N.T. 5/21/14 at 140; 5/22/14 at 15-16. [Appellant] was located in the driver's seat, with Clyde in the front passenger seat, Ferguson seated behind [Appellant], Aaron seated behind the passenger seat, and Spears seated in the middle of the back seat. N.T. 5/21/14 at 141; 5/22/14 at 17-18. [Appellant] had taken an extra plate of food from the cabaret and placed the plate on the front passenger seat. N.T. 5/22/14 at 17; 5/23/14 at 19. On entering the car, Clyde ate a portion of the food on the plate, which instigated an argument between [Appellant] and Clyde as defendant began to drive away. N.T. 5/21/14 at 142; 5/22/14 at 17-18; 5/23/14 at 21. [Appellant] had only driven a block or two before pulling the vehicle over at the comer of 2nd Street and Callowhill Street. N.T. 5/21/14 at 143-144; 5/22/14 at 19. Clyde and [Appellant] both exited the vehicle and

- 2 -

continued their fight on the street, which escalated into physical violence. N.T. 5/21/14 at 144-145; 5/22/14 at 19-20. Ferguson, Aaron, and Spears exited the vehicle and attempted to stop the fight. N.T. 5/21/14 at 145; 5/22/14 at 20. Ferguson knocked [Appellant] to the ground, who then got up and went to the trunk of his car. N.T. 5/21/14 at 145-146. [Appellant] retrieved a gun from his trunk, walked up to Clyde, and shot him once in the chest. N.T. 5/21/14 at 149-150; 5/22/14 at 20-21, 25. [Appellant] then returned to his car and fled the scene. N.T. 5/21/14 at 151; 5/22/14 at 21; 5/23/14 at 31. After getting shot, Clyde told Ferguson "Bro, I'm gone." N.T. 5/21/14 at 151. Aaron called the police. N.T. 5/21/14 at 152; 5/22/14 at 21.

Police officers responded to a call of shots fired at 2:45 p.m. on January 17, 2011: N.T. 5/21/14 at 89, 108. When officers arrived, Clyde was unconscious, with blood foaming out of his mouth. N.T. 5/21/14 at 92. Responding officers placed Clyde into a police vehicle and transported him to Hahnemann Hospital. N.T. 5/21/14 at 92, 216. Doctors at Hahnemann Hospital were able to resuscitate Clyde, who remained there until February 22, 2011, whereupon Clyde was transferred to various care facilities, including multiple returns to Hahnemann Hospital. N.T. 5/21/14 at 227-229. Clyde was shot in the left side of his chest and the bullet injured Clyde's spinal cord, rendering him paralyzed from his waist down. N.T. 5/21/14 at 232. This bullet was never removed from Clyde's spine. N.T. 5/21/14 at 243. Clyde ultimately died as a result of the gunshot wound to the chest on May 29, 2012. N.T. 5/21/14 at 229-230.

Within minutes following the shooting, Eionna called [Appellant] on his cell phone and asked him if he had shot Clyde. N.T. 5/22/14 at 130-131. Defendant told Eionna to "shut up," and that Clyde was being disrespectful by touching his plate and eating his food. N.T. 5/22/14 at 133-134, 143. [Appellant] further told Eionna that if "[her] brother don't check out, then we goin' handle it the street way." N.T. 5/22/14 at 134, 143. [Appellant] also told Eionna to tell Aaron, Spears, and Ferguson to not say anything "because they know what [I]'11 do to them." N.T. 5/22/14 at 135.

One fired cartridge case was recovered from the scene of the shooting, as well as a ski hat, a jacket, sunglasses, and a Styrofoam plate. N.T. 5/21/14 at 98; 5/22/14 at 191-192. [Appellant] was wearing the sunglasses on the night in question, which were knocked off during the fight. N.T. 5/21/14 at 179 - 180. An arrest warrant was prepared for [Appellant] on January 24, 2011. N.T. 5/22/14 at 160. [Appellant] was ultimately

- 3 -

arrested in Durham, North Carolina on February 18, 2011. N.T. 5/22/14 at 160; 5/23/14 at 44 -45.

_____

[2] At the time of the shooting, Officer Johnston's last name was Lutz. N.T. 5/21/14 at 85.

[3] [Appellant] was also identified as Buster, Bus, and Dollar Bill. N.T. 5/21/14 at 138, 142, 155; 5/23/14 at 50. Clyde Raynor was also known as Boo. N.T. 4/22/14 at 15.

[4] As Aaron, Clyde, and Eionna Raynor share their last name, they will be referred to by their first names to avoid confusion.

[5] The Notes of Testimony from May 23, 2014 are incorrectly dated May 30, 2014. While each page is incorrectly dated, the correct date does appear on page 1 of the notes. This matter was not before the Court on May 30, 2014.

Trial Court Opinion, 3/20/15 at 2-5.

Following a jury trial, Appellant was convicted of offenses stemming from two consolidated cases. At Docket No. CP-51-CR-0004214-2013, the jury found Appellant guilty of one count of third-degree murder.[1] At Docket No. CP-51-CR-0003080-2011, the jury convicted Appellant of one count each of possession of a firearm by a prohibited person, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, and possessing an instrument of crime.[2] On August 1, 2014, the trial court sentenced Appellant to an aggregate term of thirty years to sixty years in prison.

Appellant filed a timely post-sentence motion challenging his third-degree murder conviction, and the trial court denied the same on December

_____

[1] 18 Pa.C.S.A. § 2502
[2] 18 Pa.C.S.A. §§ 6105, 6106, 6108, 907, respectively.

1, 2014. While Appellant filed a timely appeal in that matter, he failed to do so in his case involving the firearms convictions. Ultimately, Appellant filed a petition pursuant to the Post Conviction Relief Act ("PCRA") on February 9, 2015, seeking reinstatement of his appeal rights *nunc pro tunc*.[3] The trial court granted Appellant's PCRA petition on February 27, 2015, and Appellant filed an appeal that same day. Thereafter, the two appeals were consolidated.

Pursuant to the trial court's direction, on February 27, 2015, Appellant filed his "Concise Statement of Errors Complained of on Appeal Pa.R.A.P. 1925(B)[.]" His statement spanned twenty-one pages and raised nine issues for the trial court's review.[4] In his appellate brief, Appellant raises the following questions for our consideration:

> A. Did the trial court abuse its discretion when it denied Appellant's motion to quash indictment?
> B. Did the trial court abuse its discretion when it denied Appellant's motion to suppress Appellant's telephone records

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

[4] We note that our Supreme Court has held that "when confronted with a non-concise Rule 1925(b) statement, a trial court has the discretion to *sua sponte* direct an appellant to file a second Rule 1925(b) statement." ***Tucker v. R.M. Tours***, 977 A.2d 1170, 1174 (Pa. 2009). Herein, the trial court did not do so and considered the merits of the nine issues Appellant raised therein.

that were obtained from Parsippany, New Jersey with a
Philadelphia Warrant?
C.    Did the trial court abuse its discretion when it denied
Appellant's writ of habeas corpus?
D.    Did the trial court abuse its discretion when it barred the
statement of Amara Diarrassouba that was contained in an
official record pursuant to 42 Pa.C.S.A. § 6103 *et. seq*?
E.    Did the trial court err by not instructing [the] jury on self
[-] defense?

Brief for Appellant at 4. We will consider each of these issues in turn.

Defendant initially contends the trial court should have granted his motion to quash the March 22, 2013, indictment because the Commonwealth presented no evidence of witness intimidation to permit the empaneling of a grand jury; thus, his procedural due process rights under the United States and Pennsylvania constitutions have been violated. Brief for Appellant at 31-33. Appellant also argues the trial court's reliance upon **Commonwealth v. Sanchez**, 82 A.3d 943 (Pa. 2013) in its March 20, 2015, Opinion is misplaced because that case speaks to alleged procedural defects at the preliminary hearing stage, not with such irregularities pertaining to the empaneling of a grand jury.[5] Appellant further reasons that the amendments to Pa.R.Crim.P. 556 which became effective on

---

[5] Therein, our Supreme Court stressed that the primary purpose for requiring prima facie evidence at the outset of a preliminary hearing is to prevent the incarceration and trial of a defendant in the absence of such evidence; thus, where a defendant has been tried and found guilty of the charges brought against him beyond a reasonable doubt, any defect in the proceedings to determine whether he was properly held for trial is rendered immaterial. **Commonwealth v. Sanchez**, 82 A.3d 943, 984 (Pa. 2013).

December 18, 2012, are inapplicable to any intimidating statements he may have made to potential witnesses on January 17, 2011.

Rule 556 authorizes the use of an indicting grand jury in lieu of a preliminary hearing in cases where "witness intimidation has occurred, is occurring or is likely to occur." Pa.R.Crim.P. 556. Pa.R.Crim.P. 556.1-556.12 detail the procedure the Commonwealth must follow in summoning panels of grand jurors and when proceeding by indicting grand jury in lieu of a preliminary hearing. Importantly, a Commonwealth motion to present a matter to an indicting grand jury instead of proceeding to a preliminary hearing "shall be presented *ex parte* to the president judge, or the president judge's designee." Pa.R.Crim.P. 556.2(A)(2). Where the court determines the allegations set forth in the motion establish probable cause that witness intimidation has occurred, is ongoing, or is likely to happen, it shall grant the motion and notify the proper issuing authority. Pa.R.Crim.P. 556.2(A)(3). No provision requires that a defendant be notified of the date upon which a grand jury will be impaneled or gives him or her a right to be present for the selection of the grand jury. Notwithstanding, Rule 556.4 sets forth the procedure one is to follow when presenting a challenge to the grand jury and to grand jurors and reads as follows:

**Rule 556.4. Challenges to Grand Jury and Grand Jurors**
Currentness
　　**(A) Challenges.** The attorney for the Commonwealth or a defendant may challenge the grand jury on the ground that it was not lawfully drawn, summoned, or selected, and may

challenge an individual juror on the ground that the juror is not legally qualified.

(1) The challenge shall be in the form of a written motion and shall allege the ground upon which the challenge is made.

(2) If a challenge to an individual grand juror is sustained, the juror shall be discharged and replaced with an alternate juror.

**(B) Motion to Dismiss**

(1) The attorney for the Commonwealth or a defendant may move to dismiss the information filed following the grand jury's vote to indict the defendant based on the following grounds:

(a) an objection to the grand jury or on an individual juror's lack of legal qualification, unless the court has previously ruled on the same objection under paragraph (A);

(b) the evidence did not establish a *prima facie* case that an offense has been committed and the defendant committed the offense;

(c) lack of jurisdiction of the grand jury; or

(d) expiration of the statute of limitations.

(2) The judge shall not dismiss the information on the ground that a grand juror was not legally qualified if the record shows that at least 12 qualified jurors concurred in the indictment.

(C) Any motion under paragraph (A) or paragraph (B) shall be made as part of the omnibus pretrial motion.

Pa.R.Crim.P. 554.4. Clearly, the Commonwealth's alleged failure to present credible evidence to the trial court that a defendant had or was likely to engage in witness intimidation is not a valid ground upon which to challenge the indicting grand jury process.

On April 4, 2013, Appellant filed his "Motion to Quash Grand Jury Indictment Commonwealth's Improper Use of Indicting Grand Jury Pa.R.Crim.P. 556" wherein he asserted repeatedly that he could not have intimidated any witnesses because he had been incarcerated since his arrest

in February of 2011. At no point therein did Appellant challenge the composition or jurisdiction of the grand jury, claim that the evidence did not establish a prima facie case he committed an offense, or argue that the statute of limitations had expired. Appellant also filed a "Motion to Dismiss Indictments" on May 20, 2013, wherein he indicated that on or about March 22, 2013, he was indicted by a Philadelphia county grand jury on first and third degree murder charges and the trial court approved such indictments; once again, he did not develop a challenge to the indicting grand jury as set forth in Rule 556.4.

In faulting the trial court for its citation to **Sanchez**, **supra**, Appellant simply ignores the fact that in matters proceeding before an indicting grand jury, the grand jury functions as does a judge at the preliminary hearing stage to determine whether the Commonwealth has presented evidence sufficient to establish a *prima facie* case that the defendant committed an offense and can be held for trial. "A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an Ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." **United States v. Calandra**, 414 U.S. 338, 345 (1974). Simply put, any evidence of witness intimidation the trial court did or did not have which caused it to proceed with an indicting grand jury

was not dispositive of the jury's ultimate finding of Appellant's guilt on all charges following trial.

Moreover, Appellant cites to no legal authority to support his bald claims his constitutional rights to due process had been violated or to his representation that any threats he may have made prior to the effective date of Rule 556 are not relevant in a consideration of whether an indicting grand jury proceedings had been proper. As such, these arguments are waived for lack of development. *See* Pa.R.A.P. 2119(a); *Commonwealth v. Spots*, 18 A.3d 244, 282 (Pa. 2011).

Appellant next argues the trial court abused its discretion in denying his motion to suppress his cellular phone records and avers the search warrant exceeded the scope of the Philadelphia County's jurisdiction, for "as a matter of statutory law it is illegal for a Pennsylvania court to issue a search warrant that is to be executed for records physically stored in New Jersey." Brief for Appellant at 42. Appellant reasons that while the search warrant indicated T-Mobile keeps its records in Parsippany, New Jersey, it did not specify it was directed to T-Mobile conducting business within the City of Philadelphia. *Id*. at 42-43. Appellant generally avers his rights under the Fourth Amendment of the United States Constitution and Article 1 § 8 of the Pennsylvania Constitution require that the places to be searched pursuant to a search warrant must be described with particularity; he contends the failure of officers to identify on the face of the warrant the

specific premises for a T-Mobile custodian of records located in Philadelphia violates those rights. *Id*. at 48.

We review the denial of a suppression motion according to the following well-settled standard:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015) *reargument denied* (Sept. 30, 2015).

Prior to the commencement of trial on May 19, 2014, Appellant orally moved to suppress his telephone records claiming the detective who swore out the warrant and the judge who signed it are officials of the Commonwealth of Pennsylvania who had no jurisdiction in New Jersey where the records were purportedly housed. N.T., 5/19/14 at 19. After hearing argument, the trial court instructed Appellant to provide it and the Commonwealth with caselaw on the issue, and the parties agreed to

reconvene later that afternoon. *Id*. at 24-25. At that time the Commonwealth stressed that T-Mobile has an office in Philadelphia and is a company that regularly does business in Philadelphia. It further averred the activity for which the records were being sought occurred in Philadelphia and the warrant sought information concerning a Philadelphia resident and listed a Philadelphia area phone number. N.T., 5/19/14 at 20-21, 32-35, 42.

Upon hearing further argument, the trial court provisionally denied Appellant's motion without prejudice to him to renew it if he could garner authority to support his position that "it doesn't matter that there is a local presence here in Philadelphia that's recorded on the search warrant." Appellant responded to this ruling with "Okay." N.T., 5/19/14 at 44.

In his appellate brief, Appellant has misstated the trial court's view of the warrant and ignored its plain terms. He maintains "the trial court found that the search warrant stated that the cell phone records were kept in Parsippany, N.J." and that it "also found that the search warrant did not say that it was directed to T-Mobile at 18th and Chestnut Streets." Brief for Appellant at 20, 40 (citing N.T., 5/19/14 at 42); however, a review of the transcripts reveals that the court stated the process had been directed to a local branch of the national corporation. N.T., 5/19/14 at 40. Also, the face of the warrant indicates it was not issued for a premises in New Jersey or used as a tool to obtain out-of-state data, for it sought information connected to a Philadelphia phone number as is evinced by its 215 area

code. In addition, the warrant provided the following specific description of premises and/or persons to be searched: "T-Mobile, LER Group, 4 Sylvan Way, Parsippany, New Jersey 07054 **that conducts business within the City of Philadelphia at 18th & Chestnut Streets**." (emphasis added).

> Appellate review of an order denying suppression:

> is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Freeman*, 2015 WL 7756864, at *5 (Pa. Super. Dec. 2, 2015) (citations omitted).

Nowhere before the trial court did Appellant challenge the probable cause underlying the issuance of a warrant to obtain his cell phone records or present evidence that the records, in fact, were stored outside of the Commonwealth and specifically in Parsippany, New Jersey. Also, while in his appellate brief Appellant avers that his cell phone records constituted "informational privacy" under New Jersey law and that the warrant failed to describe with particularity the place to be searched in Philadelphia, he never raised such arguments before the trial court. His failure to advance these particular legal theories initially before the trial court renders these

additional claims waived. Pa.R.A.P. 302(a)("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

In support of his third issue, Appellant contends his extradition from North Carolina to Pennsylvania pursuant to the Uniform Criminal Extradition Act, 42 Pa.C.S.A. §§ 9121-9148, was illegal because he did not knowingly and intelligently sign the waiver of extradition from. Appellant asserts the North Carolina Waiver of Extradition Findings and Order contained a material misstatement of fact that he had committed a crime in Pennsylvania on February 18, 2011, although the charging documents in Pennsylvania bore an alleged offense date of January 17, 2011. Brief for Appellant at 49. Appellant reasons that in reliance upon this misinformation, Appellant involuntarily returned to this Commonwealth and as a result the trial court never obtained personal jurisdiction over him. *Id*. at 53. Appellant concludes that as the Commonwealth bore the burden of proving a valid waiver of extradition and yet proffered no evidence to show Appellant intelligently and knowingly waived his right to extradition, "the trial court abused its discretion in refusing to grant a writ of habeas corpus for the extradition itself was invalid." *Id*. at 54 (citing **Commonwealth v. Livengood**, 901 A.2d 556 (Pa.Super. 2006)).

Ordinarily, an appellate court will review a grant or denial of a petition for writ of habeas corpus for abuse of discretion; however, in cases concerning questions of law, our standard of review is *de novo*, and our

scope of review is plenary. ***Commonwealth v. Judge***, 916 A.2d 511, 521 n.13 (Pa. 2007). Appellant filed his Motion for Writ of Habeas Corpus on October 9, 2013, wherein he claimed his sole reason for returning to Pennsylvania was to defend himself against a crime he believed he could not have committed because he was residing in North Carolina in February of 2011. A review of the record reveals that on February 21, 2011, Appellant signed a State of North Carolina "Waiver of Extradition Findings and Order" form whereon it is indicated he had been charged with "Attempted [sic] to Commit Murder." The date of the crime reads "2/18/ 2011," and the State and County is listed as "Pennsylvania Philadelphia." Notwithstanding, as the trial court stressed in its Opinion, there is no evidentiary support for Appellant's position that the authorities in North Carolina and/or Pennsylvania intentionally misstated the date of Appellant's alleged criminal conduct in an effort to dupe Appellant into returning to the Commonwealth. Trial Court Opinion, filed 3/20/15 at 8 (*citing* ***Commonwealth v. Pass***, 360 A.2d 167, 170 (Pa. 1976) (absent outrageous police conduct like the use of force or kidnapping to bring a defendant within the jurisdiction of a Pennsylvania court, the manner in which he or she was brought into its jurisdiction does not affect its authority to adjudicate his case)). To the contrary, the waiver form indicates Appellant was apprised of his right to contest the extradition process in North Carolina and instead chose to waive his right to any challenge to the infirmity of that process, like the date of the

alleged charges indicated thereon. The date of the crime was clearly visible on the form, and Appellant had ample opportunity to call that notation into question while he was in North Carolina, which would have been the proper venue in which to do so. In this regard, the Waiver of Extradition Findings and Order form bears the signature of District Court Judge James Hill which follows the following assertion:

> I am a Judge or Clerk of Superior Court of the General Court of Justice of North Carolina, a court of record. The defendant named above appeared before me this day. I informed the defendant of the right to the issuance and service of a Governor's Warrant and to obtain a writ of habeas corpus as provided for in N.C. G.S. 15A-730. The defendant then freely, voluntarily and understandingly executed the above Waiver in my presence.

In light of the foregoing, we find that despite his bald allegations to the contrary, the plain language of the waiver form evinces the ramifications of the waiver process were explained to Appellant. He does not dispute that he had an opportunity to review the wavier form, was informed of his rights pursuant thereto, and at no time questioned the date of the crime before signing it on February 21, 2011. It follows that the waiver was valid. *See* *Commonwealth v. Green*, 581 A.2d 544, 556 (Pa. 1990) ("so long as the waiver is explained to defendant and his consent is not coerced, the waiver is valid"); *Commonwealth ex rel. Myers v. Case*, 378 A.2d 917, 919 (Pa.Super. 1977) (en banc) ("[T]echnical or formal objections will not invalidate an extradition proceeding."). Therefore, the trial court correctly denied Appellant's motion for writ of habeas corpus.

- 16 -

Next, Appellant contends the trial court abused its discretion when it barred the admission into evidence at trial an unavailable taxi driver's statement to police on the night of the incident. Appellant maintains Amara Diarrassouba's statement was part of an official document and constituted exculpatory evidence in that it bolstered his self-defense theory. Appellant asserts that such statements are admissible at trial under the public records exception to the hearsay rule and supports his view with our Supreme Court's decision of **D'Alessandro v. Pa. State Police**, 937 A.2d 404 (Pa. 2007). Appellant maintains Mr. Diarrassouba was a known source of information and eyewitness to the incident and indicated he observed three individuals beating another. Brief for Appellant at 57-58. Appellant stresses that Mr. Diarrassouba's interview with police was conducted within two hours of his observations and memoralized in a report which contains no obvious errors and should have been provided to the jury. **Id**. at 58.

"When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." **Deeds v. Univ. of Pa.Med.Ctr.**, 110 A.3d 1009, 1017 (Pa.Super. 2015).

Although Appellant relies entirely upon **D'Alessandro**, it is important to note that therein, in an Opinion announcing the Judgment of the Court, our Supreme Court reviewed the decision of an administrative agency

- 17 -

following the denial of the appellant's application for a license to carry a firearm. The Court stated that "hearsay evidence may generally be received and considered during an administrative proceeding." *D'Alessandro*, 937 A.2d at 411. Herein, Appellant attempts to find support in that holding for his assertion that the trial court erred in refusing to admit the police report as a business record under Pa.R.E. 803(6) and 42 Pa.C.S.A § 6108 in a criminal proceeding; however, both the evidentiary rule and the statute provide that a business record may be excluded under circumstances where the trial court has reason to question its trustworthiness. *See* Pa.R.E. 803(6)(E) (stating that a business record is a hearsay exception "unless the sources or information or other circumstances indicate lack of trustworthiness."); 42 Pa.C.S.A. § 6108(b) (providing a business record is competent evidence "if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.").

Moreover, Appellant fails to acknowledge in his appellate brief that Mr. Diarrassouba was an unavailable witness; therefore, the narrative contained in his statement to police constituted double hearsay. Nor does Appellant set forth a basis upon which the trial court should have admitted that layered hearsay statement other than the fact that it was part of a official

document of the Philadelphia police.[6] "Merely characterizing a document as a business record is insufficient to justify its admission because a business record which contains multiple levels of hearsay 'is admissible only if each level falls within a recognized exception to the hearsay rule.'" Therefore, Appellant's fourth claim must fail. *Birt v. Firstenergy Corp.*, 891 A.2d 1281, 1291 (Pa.Super. 2006) (citation omitted).

Lastly, Appellant avers the trial court erred in failing to provide the jury with a self-defense instruction. In its Opinion, the trial court noted that although defense counsel requested a self-defense instruction before it charged the jury, it denied such request because Appellant consistently had maintained throughout trial that he never intentionally shot the decedent.[7] Trial Court Opinion, filed March 20, 2015, at 11, n.8 (citing N.T., 5/20/14 at 18; N.T., 5/21/14 at 78; N.T., 5/22/14 at 236-237; 5/23/14 at 27, 75-78).

_____

[6] While at trial Appellant unsuccessfully argued Mr. Diarrassouba's statement was admissible under the excited utterance exception to the hearsay rule, *See* Pa.R.E. 803(2), he does not advance that argument before this Court. In its Opinion, the trial court indicated it had ruled Mr. Diarrassouba's statement was not admissible as an excited utterance because the incident occurred at approximately 2:45 a.m., but Mr. Diarrassouba did not provide a written statement to police until two hours later. The trial court reasoned the intervening two hours provided Mr. Diarrassouba with ample time to reflect upon his memory of the events and no evidence was adduced at trial to the contrary. Trial Court Opinion, filed March 20, 2015, at 10.

[7] The Commonwealth likewise argues Appellant has waived any objection to the adequacy of the trial court's instruction for his failure to object after the court provided it to the jury. In the alternative, the Commonwealth asserts Appellant was not entitled to his requested self-defense instruction as he had not developed a valid claim of self-defense during trial. Commonwealth's Brief at 21-22.

The trial court further explained that not only did Appellant deny shooting Clyde Raynor, he testified that he never touched the weapon that killed him; thus, he was not entitled to a self-defense instruction. *Id*. at 11 (citing *Commonwealth v. Harris*, 665 A.2d 1172, 1175 (Pa. 1995) (where a defendant denies shooting the victim, there is no issue of self-defense)). Notwithstanding, the trial court ultimately found Appellant had waived this claim on appeal. The court explained that after it had instructed the jury, it held a discussion with counsel at sidebar and asked if either had any exceptions to the charge, at which time defense counsel indicated he had none. Trial Court Opinion, filed March 20, 2015, at 11 (citing N.T., 5/27/14 at 48).

Pa.R.Crim.P. 647(B)-(C) states that "[n]o portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retired to deliberate" and "[a]fter the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge." "Generally, a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary." *Commonwealth v. Charleston,* 16 A.3d 505, 527-28 (Pa.Super. 2011).

The record reveals that on May 23, 2014, defense counsel sought guidance from the trial court and questioned whether Appellant's testimony

he had engaged in a struggle with Robert Spears warranted a self-defense charge to the jury. N.T., 5/23/14 at 101. The trial court opined such an instruction was not justified, for while Appellant represented that he had feared for his life during the struggle, he also testified at trial that the shooting was an accident and that he had not touched the firearm at all. The trial court told counsel that "[y]ou've preserved that issue and I'm denying your request based on what Appellant said, your opening, and all the presentation." N.T., 5/23/14 at 102. However, the trial court's statement on May 23, 2014, that Appellant had "preserved" the issue for its consideration prior to the time it actually instructed the jury does not equate to a timely objection following its ultimate failure to charge the jury on self-defense which would have preserved this claim for appellate review. As such, the trial court properly found this issue waived. ***Charleston***, ***supra***.

After careful review of the entire certified record, we discern no abuse of discretion in the trial court's analysis.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

Judge Ott concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2016